1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   A.V., a minor, by parent and Guardian          No.  1:15-cv-00246-MCE-JLT
     ad Litem CONCEPCION VARELA,
12
                 Plaintiff,
13                                                   **MEMORANDUM AND ORDER**
           v.
14
     PANAMA-BUENA VISTA UNION
15   SCHOOL DISTRICT, DOES 1-20,

16               Defendants.

17

18         Through the present lawsuit, Plaintiff Concepcion Varela ("Plaintiff"), as parent

19   and guardian ad litem for her minor son, A.V., challenges various actions taken by

20   Defendant Panama-Buena Vista School District ("District") with respect to A.V.'s

21   educational placement.  Plaintiff has already pursued two special education "due

22   process" proceedings in accordance with the provisions of the Individuals with

23   Disabilities Education Act., 20 U.S.C. § 1400, et seq. ("IDEA") to rectify what she alleges

24   were unlawful steps taken by the District against her son.  She now appeals adverse

25   decisions rendered by the Office of Administrative Hearings ("OAH") following those

26   hearings and, in addition to IDEA violations, also claims violations of § 504 of the

27   Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Section 504") as well as

28   discrimination on the basis of disability and national origin.

                                                 1

Presently before the Court is Plaintiff's Motion for Preliminary Injunction.  That Motion seeks a mandatory injunction vacating the District's expulsion of A.V. and reinstating A.V. into the District's public school program, along with appropriate IDEA modifications and/or accommodations.  For the reasons set forth below, Plaintiff's Motion is DENIED.[1]

**BACKGROUND[2]**

Plaintiff enrolled A.V. at the District's Stonecreek Junior High School prior to the first day of the 2014-15 term.  A.V. was twelve years old at the time.  On August 18, 2015, the first day of school, Plaintiff provided the District with a copy of A.V.'s most recent Section 504 plan along with a behavior support plan from the Bakersfield City School District where A.V. had previously attended school.  Plaintiff claims she told the District that A.V. had a medical diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

A.V. had previously received speech and language assistance from the District in 2007 as a child with speech and language impairment qualifying for services under the IDEA.  In 2008, however, the District lawfully exited A.V. from the special education program because it determined that A.V. had met his goals and consequently no longer needed IDEA services.  Plaintiff consented to that exit.  Clark Decl, ECF No. 53, ¶¶ 5-6.

A.V. began to have behavioral incidents at school soon after returning to the District.  On August 21, 2015, just three days after classes commenced, he was referred to the office for provoking a fight with another student and being combative.  Thereafter, on August 27, 2014, A.V. allegedly threatened to injure another student and is also

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

[2] The facts in this section are derived from the allegations as set forth in Plaintiff's Amended Complaint, as augmented by additional facts drawn from the OAH's decisions in this matter attached as Exhibits A, B and C to the Complaint and Amended Complaint.

1   purported to have bullied, intentionally harassed and intimidated a group of students.

2   This caused the District to suspend A.V. two days.  On that same day the District held a

3   Section 504 team meeting and developed a Section 504 Accommodation Plan for A.V.

4   Plaintiff attended the meeting with the assistance of a Spanish interpreter provided by

5   the District and accompanied by an educational advocate.   At that time, the District

6   believed that A.V.'s behaviors could be addressed through accommodations in his

7   Section 504 plan, and Plaintiff consented to the District's proposals in that regard.

8          On September 11, 2014, after the District intervention counselor observed A.V.

9   grabbing a female student's buttocks, A.V. was suspended for an additional three days,

10  and the District scheduled a Section 504 Manifestation Determination Meeting for

11  September 18, 2014.[3]  In the meantime, on September 15, 2014, Plaintiff sent the

12  District a handwritten letter in English requesting that A.V. be assessed for eligibility for

13  special education services.  Thereafter, at the September 18, 2014, meeting, the

14  District's psychologist told Plaintiff, who again participated through a Spanish interpreter,

15  that the District wanted to assess Plaintiff for special education.[4]   After Plaintiff told

16  District staff that she thought A.V. did better with male teachers and counselors, the

17  District recommended that A.V. transfer to Thompson Junior High School where more

18  support from male staff members was available.  Plaintiff consented to that transfer.

19         A.V. began attending Thompson the following day, September 19, 2014.  On

20  September 22, 2014, school psychologist Brittany Gentry generated a Consent for

21  Assessment of A.V.'s special education eligibility that included both a functional

22  behavioral assessment and an evaluation of any emotional disturbance and specific

23  learning disability.  Ms. Gentry made that decision both because of Plaintiff's concerns

24  and because she believed A.V.'s numerous defiant and inappropriate behaviors made

25  such an evaluation appropriate.  According to the District, it mailed the Consent for

26  _____

    [3] The purpose of a Manifestation Determination Hearing under the Rehabilitation Act is to

27  determine whether the offending behaviors arise from the student's identified disability, here ADHD, as
    opposed to other sources.

28         [4] It appears that the psychologist was not aware of Plaintiff's recent letter at that time.

1  Assessment to Plaintiff at her address of record and that mailing was not returned.  The

2  initial Consent form was generated in English because that was the language Plaintiff

3  had used in her written letter requesting a special education evaluation.

4  Nonetheless, in a subsequent Section 504 amendment meeting on October 7,

5  2014, which Plaintiff attended, District Special Education Assistant Director Janet Clark

6  claims she provided Plaintiff with, and reviewed, a Spanish language version of the

7  September 22, 2014 assessment.  Ms. Clark and school psychologist Matt Harper told

8  Plaintiff why the District wanted to perform an assessment, explaining that an evaluation

9  was needed before determining what additional supports and services A.V. might need.

10  When Ms. Clark asked Plaintiff to sign the Consent, she states that Plaintiff declined on

11  grounds that she wanted to discuss the document with her husband.  On October 15,

12  2014, after having not received the Consent back, another Spanish version was sent

13  which, like the earlier English version mailed on September 22, 2014, was apparently

14  never received back as undeliverable.

15  On November 19, 2014, after A.V. continued to engage in inappropriate

16  behaviors, the District held yet another Section 504 Manifestation Determination team

17  meeting at which time Ms. Clark claims she provided another Spanish version of the

18  Consent form, in the presence of Plaintiff's Spanish-speaking educational advocate and

19  with the assistance of a Spanish interpreter.  Plaintiff declined to sign, and according to

20  the OAH's November 22, 2014 decision, Plaintiff denied at the due process hearing that

21  she ever received it.  Although the District claims that it followed up by sending additional

22  copies by mail on November 22, 2014, December 2, 2014, and December 4, 2014,

23  Plaintiff again denied receiving any of the forms.  The OAH hearing officer found this

24  testimony not to be credible, particularly in the face of numerous District witnesses who

25  "consistently and credibly" testified that she had been given the Consent forms directly at

26  various Section 504 meetings with the forms explained  through an interpreter, as well as

27  District testimony that it had mailed copies of the documents in both English and Spanish

28  ///

1  to Plaintiff's address of record on at least four different occasions without receiving them
2  back as undeliverable.

3       At the time of the November 14, 2014, meeting, the Section 504 team determined
4  that A.V's behavior, which had allegedly included, inter alia, sexually inappropriate
5  conduct, defiance and failure to follow directions, and banging his head against the wall
6  in the principal's office, was not related to his ADHD condition.  See Clark Decl., ¶ 18.
7  The District ultimately decided to expel Plaintiff based on this behavior.

8       On November 21, 2014, Plaintiff filed an expedited due process complaint[5] which
9  alleged that the District failed to properly consider A.V.'s disabilities before reaching its
10  discipline determination.[6]  In accordance with the legal requirement that such an
11  expedited hearing be conducted in short order, proceedings before an OAH hearing
12  officer were held between January 6, 2015, and January 8, 2015.  By decision dated
13  January 23, 2015, the hearing officer denied Plaintiff's complaint on grounds that
14  because Plaintiff had not allowed the District to evaluate A.V. for special education
15  eligibility, she did not meet her burden of establishing that A.V. was a child with a
16  disability eligible for special education support and services prior to being expelled.  The
17  fact that Plaintiff finally returned a signed Consent form on the first day of the hearing,
18  January 6, 2015, was deemed to be of no moment since no consent was forthcoming
19  prior to A.V.'s expulsion despite numerous attempts by the District to secure such
20  consent beforehand.
21  ///

22  _____

23  [5] An expedited due process complaint is made pursuant to 34 CFR §§ 300.530 and 300.532 and challenges, inter alia, discipline meted out to a disabled student that changes the student's placement.  An
24  expedited hearing can also be requested for a manifestation determination that the student's offending conduct was or was not caused by his or her disability.  See 34 C.F.R. § 300.530(e).  A.  non-expedited complaint, on the other hand, may generally challenge the provision of a Free and Appropriate Public
25  Education ("FAPE") to disabled  students as guaranteed by the IDEA I under 34 C.F.R. §§ 300-507- 300.516.

26  [6] An earlier October 6, 2014, expedited complaint was dismissed by Plaintiff on November 3, 2014.  Both the October 6, 2014, and November 21, 2014 complaints, however, also included non-
27  expedited portions, which, as delineated below, were ultimately adjudicated through the OAH's June 11, 2015 decision.
28

On September 7, 2015, Plaintiff filed an appeal of the OAH hearing dated January 23, 2015, as well as an earlier decision by the hearing officer imposing sanctions on Plaintiff's counsel issued on December 10, 2014. According to Plaintiff's counsel, she had to file the appeal to protect her rights with respect to those decisions even though the related non-expedited portion of her claims had not yet been resolved.[7]

A hearing on the non-expedited claims, which included claims that Plaintiff failed to timely assess A.V. in all areas of suspected need for special education placements, as well as claims that the District had deprived Plaintiff of the opportunity to meaningfully participate in Plaintiff's IDEA program by failing to translate disciplinary documents into Spanish, took place over the course of three days between April 15, 2015 and April 17, 2015.

The hearing officer rendered her decision on Plaintiff's non-expedited claims on June 11, 2015. That decision was in Plaintiff's favor to the extent the hearing officer concluded that the District had sufficient information between August 18, 2014, and October 6, 2014, to trigger its duty to assess A.V. for special education eligibility. Even though A.V. did not begin classes until August 18, 2014, the hearing officer opined that because Plaintiff had told District personnel that A.V. had previously been expelled from Bakersfield City School District for sexual battery, and because Plaintiff's aggressive and defiant behaviors manifested almost immediately, a duty to assess was triggered from the onset. Moreover, because the District did not provide a copy of the Consent form to Plaintiff in Spanish until October 7, 2014, its failure to properly assess continued until the preceding day. Nonetheless, given Plaintiff's repeated failure to return the Consent form in a timely fashion once it had been provided to her as delineated above, the hearing officer found that no IDEA "child find" obligation was breached after October 7, 2014. In addition, the hearing officer rejected Plaintiff's claim that the District had to translate all disciplinary documents from A.V.'s cumulative file for Plaintiff, or to provide Plaintiff

---

[7] California Education Code § 56505(k) provides that any appeal of an OAH decision be made within 90 days.

1   written explanations in Spanish for each disciplinary event, in order to ensure her

2   meaningful participation in the IDEA process.

3        On August 28, 2015, Plaintiff filed an Amended Complaint in this matter which

4   appealed, in addition to the December 10, 2014, sanctions order and the January 23,

5   2015, decision on Plaintiff's expedited claims, also the OAH's June 11, 2015, decision as

6   to the non-expedited portions of Plaintiff's claims.

7        In framing the issue now before the Court in the context of Plaintiff's request for

8   preliminary injunctive relief, Plaintiff first alleges that she is likely to succeed on the

9   merits of her claim that the District "illegally failed to evaluate [A.V.] for his identified

10  disabilities." Pl.'s Am. Mot., ECF No. 48, 7:13-16.   Second, she claims that the District

11  "failed to consider [those] disabilities in its [Section] 504 manifestation review." Id.

12  According to Plaintiff, the District failed to conduct a Section 504 compliant reevaluation

13  after she advised the District of A.V.'s diagnoses. Id. at 7:22-23. Plaintiff further alleges

14  that her son "has and continues to suffer irreparable harm" by being totally excluded

15  "from the District's educational programs." Id. at 16: 26-27.

16

17                                  **STANDARD**

18

19        Issuance of preliminary relief in advance of a decision on the merits is always

20  considered an "extraordinary and drastic remedy" (Munaf v. Geren, 553 U.S. 674,

21  689-90 (2008)) that "may be awarded upon a clear showing that the plaintiff is entitled to

22  such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008).  A party

23  requesting such relief must show that "he is likely to succeed on the merits, that he is

24  likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

25  equities tips in his favor, and that an injunction is in the public interest." Stormans, Inc. v.

26  Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20).

27  Alternatively, under the so-called "sliding scale" approach, as long as a plaintiff

28  demonstrates the requisite harm and shows that an injunction is in the public interest, a

1    preliminary injunction can still issue so long as serious questions going to the merits are

2    raised and the balance of hardships tips sharply in Plaintiff's favor.  <u>Alliance for Wild</u>

3    <u>Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (finding that sliding scale test

4    for issuance of preliminary injunctive relief remains viable after <u>Winter</u>).

5         A preliminary injunction should ordinarily not issue, however, if the probability of

6    success on the merits is low.  <u>Johnson v. Cal. State Bd. of Accountancy</u>, 72 F.3d 1427,

7    1430 (9th Cir. 1995).  "[E]ven if the balance of hardships tips decidedly in favor of the

8    moving party, it must be shown as an irreducible minimum that there is a <u>fair chance</u> of

9    success on the merits."  <u>Id.</u>, quoting <u>Martin v. Int'l Olympic Committee</u>, 740 F.2d 670,

10   675 (9th Cir. 1984) (emphasis added).  Moreover, a request for mandatory injunctive

11   relief, like that sought here in affirmatively seeking  A.V.'s reinstatement as a student in

12   the District, "goes well beyond simply maintaining the <u>status quo pendente lite</u> [and] is

13   particularly disfavored."  <u>LGS Architects v. Concordia Homes of Nev.</u>, 434 F.3d 1150,

14   1158 (9th Cir. 2006) (citation omitted).  Therefore, "when a mandatory preliminary

15   injunction is requested, the district court should deny such relief, 'unless the facts and

16   law clearly favor the moving party.'"  <u>Stanley v. Univ. of S. Cal</u>., 13 F.3d 1313, 1320 (9th

17   Cir. 1994).

18

19                                    **ANALYSIS**

20

21        In analyzing Plaintiff's request for a preliminary injunction in this matter, the Court

22   must first clarify the extent of its review given the posture of this case.  As indicated

23   above, Plaintiff's Amended Complaint appeals three different OAH decisions dated

24   December 14, 2014, January 23, 2015 and June 11, 2015, respectively.  The December

25   10, 2014, Order, which assesses sanctions against Plaintiff's counsel for prematurely

26   filing an expedited hearing request, does not pertain to the injunctive relief sought by

27   way of this Motion.  Instead, Plaintiff's current request hinges on the assertion that A.V.

28   was not properly assessed for IDEA eligibility prior to disciplinary measures being taken

                                          8

1    against him.  Also relevant to the present Motion is Plaintiff's assertion that A.V.'s

2    Section 504 manifestation determination also did not properly take into account A.V.'s

3    diagnosis of ADHD as well as other allegedly disabling conditions on his part.

4           The time period encompassed by these assertions runs through November 21,

5    2014, when Plaintiff filed her amended due process hearing request based on the

6    District's alleged failure to accommodate A.V.'s needs prior to that time.  A hearing on

7    those claims was held in April of 2015, and the OAH's decision was rendered June 11,

8    2015.  As indicated above, Plaintiff's expedited claims stemming from Plaintiff's

9    November 21, 2014 amended hearing request had already been decided by an earlier

10   January 23, 2015 decision.

11          Despite these clearly delineated time frames, Plaintiff now makes various

12   allegations extending well beyond the November 21, 2014 date of the amended hearing

13   request whose determination demarcates the extent of the present lawsuit.  Plaintiff

14   takes issue, for example, with the District Board's decision on January 23, 2015 to

15   formally expel Plaintiff, and with its subsequent determination, in January of 2016, to

16   extend that expulsion for another year.  Plaintiff further alleges that the special education

17   services A.V. was provided, once she finally consented to a special education

18   assessment in January 6, 2015, were inadequate.

19          Specifically, on October 6, 2015, Plaintiff filed another due process hearing

20   request with OAH on grounds that the District's decision to expel Plaintiff in January

21   2015 violated the IDEA.[8]  That decision was also denied by OAH, and on February 9,

22   2016, Plaintiff filed a further due process request that appears to have been precipitated

23   by the Board's decision in January of 2016 to extend his expulsion for another year.

24   Plaintiff, however, failed to administratively appeal either expulsion despite the

25   provisions of California Education Code § 48919, which permits a student's parent or

26   guardian to appeal an expulsion decision to the county board of education within 30

27   days following a decision to expel by a school's governing board.  The fact that no such

---

28          [8] An earlier April 3, 2015 due process hearing request was ultimately withdrawn by Plaintiff.

1    appeal was made in this case precludes Plaintiff's current challenges to A.V.'s expulsion,

2    since an individual who claims, like Plaintiff, to have been aggrieved by the decision of a

3    public entity must exhaust all available administrative remedies before resorting to the

4    courts.  McAllister v. County of Monterey, 147 Cal. App. 4th 253, 274 (2007).  Even if the

5    administrative remedy provided by statute, like § 48919, is premised on permissive as

6    opposed to mandatory terms, the administrative process must nonetheless be utilized

7    prior to judicial review.  Cal. Water Impact Network v. Newhall County Water Dist.,

8    161 Cal. App. 4th 1464, 1489 (2008).

9         Additionally, to the extent that Plaintiff claims that the District's action after

10   January 21, 2014, violated IDEA's mandate that all students be provided a FAPE, those

11   claims are also not properly before this Court.  First, those claims are not encompassed

12   within the terms of Plaintiff's Amended Complaint itself, which purports to appeal only the

13   three OAH decisions of December 14, 2014, January 23, 2015, and June 11, 2015, as

14   delineated above.  That alone makes it improper for the Court to consider Plaintiff's

15   apparent challenge to the OAH's subsequent November 13, 2015, decision denying her

16   later October 6, 2015 due process claim.  Second, with regard to Plaintiff's February 9,

17   2016, due process claim, to the Court's knowledge those proceedings remain pending.

18   Consequently, in addition to the fact that they are not properly before the Court in the

19   first place, this Court lacks jurisdiction in any event to hear an appeal absent exhaustion

20   of administrative remedies by way of a completed special education due process

21   proceeding.  M. M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1090 (9th Cir. 2012).  Here,

22   there is no indication that any such exhaustion has taken place.

23        It follows that in determining the propriety of a preliminary injunction at this time

24   the Court's analysis is limited to the circumstances as they existed at the time of

25   Plaintiff's November 21, 2014, due process request, since that is the last fully exhausted

26   proceeding for which Plaintiff's lawsuit seeks redress.  In that regard, as indicated above,

27   Plaintiff claims that A.V. was not properly assessed for eligibility for IDEA services before

28   disciplinary actions were taken against him.  Plaintiff further claims that the District also

10

1    failed to conduct an adequate Section 504 rehabilitation determination that considered

2    A.V.'s disabilities prior to such discipline.

3         On the basis of the record before it, the Court concludes that Plaintiff lacks a

4    reasonable likelihood of success as to either argument.  First, the OAH hearing officer

5    has determined in two different decisions that it was Plaintiff's own failure to provide

6    written consent for A.V's assessment that resulted in the District's initial recommendation

7    that A.V. be expelled in November 2014.

8         It is well established that under both the IDEA and California law, a school district

9    has an affirmative obligation to identify, locate, and evaluate all children with disabilities

10   residing within its boundaries.  20 U.S.C. § 1412(a)(3); Cal. Ed. Code § 56300, et seq.

11   Before any action is taken to provide special education services to such students, a local

12   education agency like the District must provide prior written notice to a parent or

13   guardian of its intent to evaluate a child for IDEA eligibility.  20 U.S.C. §§ 1415(b)(3), (c).

14   To that end, the District had to assess A.V. in all areas of suspected disability.[9]  Before

15   making such an assessment, the District had to provide proper notice of its intent to do

16   so to Plaintiff.  20 U.S.C. § 1414(b)(1); Cal. Ed. Code § 56381(a).  That notice had to

17   provide that the District would not take such action in implementing an assessment (and

18   any resulting IEP) without Plaintiff's consent.  Moreover, such informed consent had to

19   be obtained from Plaintiff before the District could conduct any IDEA evaluation.

20   20 U.S.C. § 1414(a)(1)(D)(i)(I).

21         Here, the hearing officer concluded that Plaintiff was provided copies of the

22   Consent for Evaluation on at least four different occasions but failed to provide the

23   requisite consent.  While Plaintiff contended that she neither received nor knew about or

24   understood the need for such consent, the hearing officer did not find that testimony

25   credible.  Absent such evaluation, which Plaintiff herself prevented by failing to provide

26   the requisite written consent, the District lacked the requisite "basis of knowledge" that

27   that it had to comply with the IDEA when disciplining A.V.  See OAH January 23, 2015

28         [9] See 20 U.S.C. §1414(b)(3)(B); 34 C.F.R. § 300.304(c)(4) (2006); Cal. Ed. Code § 56320(f).

1   Decision, Ex. B. to Pl.'s Compl., ECF No. 2-2, ¶ 12.  Moreover, absent such consent

2   from Plaintiff, the hearing officer further reasoned that the District had met its IDEA

3   assessment obligations and could not be faulted for failing to assess Plaintiff  between

4   October 7, 2014, (once it had provided Plaintiff with a Consent Form in Spanish) and

5   November 24, 2014 (when Plaintiff filed her amended due process hearing request).

6   See OAH June 11, 2015 Decision, Ex. C to Pl.'s Amended Complaint, ECF No. 7, ¶ 18.

7   While Plaintiff appears to argue that the hearing officer's credibility determinations in

8   making those conclusions  were misplaced, it would be improper for this Court to revisit

9   those determinations (made as they were based on the hearing officer's observations

10  over multiple days of several hearings) in the context of the present motion.  Additionally,

11  while Plaintiff appears to identify other potential evidence that may indicate the District

12  falsified documents and/or testimony before the OAH, no such evidence is presently

13  before the Court.  What is before the Court is the fact that Plaintiff failed to return her

14  written Consent for Assessment until January 6, 2015, well after the initial decision to

15  expel A.V. had been made by District staff in November of the previous year.  Given that

16  failure, the Court finds that Plaintiff lacks the likelihood of success on the merits of her

17  IDEA "child find" allegations against the District.

18       Plaintiff's likelihood of success on the merits of her Section 504 claim is no better.

19  Plaintiff's Section 504 claims also appear to rest upon the assertion that A.V.'s behaviors

20  should have caused the District to take additional measures, including a more restrictive

21  educational setting and special education, before resorting to expulsion.  This assertion

22  is also belied by Plaintiff's refusal to consent to A.V.'s special education evaluation prior

23  to January 6, 2015.  Prior to the District staff's decision to expel A.V., it was only on

24  notice of A.V.'s ADHD diagnosis.  On November 19, 2014, the District held a

25  manifestation determination hearing where staff determined that A.V's behavior was not

26  a manifestation of his ADHD, and that the District could proceed with expulsion.  Clark

27  Decl. at ¶ 18.  Without the special education evaluation that Plaintiff's failure to consent

28  had precluded, the District cannot be faulted for failing to consider other alleged

12

1  disabilities since the District had no "basis of knowledge" absent such an assessment.

2  20 U.S.C. § 1415(k)(5)(C); OAH January 23, 2015 Decision, ¶ 13.

3      The Court consequently concludes that Plaintiff lacks any reasonable likelihood of

4  success on the merits for either of the issues on which she bases her claim for injunctive

5  relief.  As indicated above, a preliminary injunction should ordinarily not issue if, as in

6  this case, the probability of success on the merits is low.  Johnson v. Cal. State Bd. of

7  Accountancy, 72 F.3d at 1430.

8      In addition, examination of the other factors pertinent in determining whether to

9  grant injunctive relief also do not favor the extraordinary relief Plaintiff requests.  In order

10 to justify preliminary injunctive relief, Plaintiff must also establish that irreparable injury is

11 likely in the absence of an injunction.  Winter v. Natural Resources Defense Council,

12 Inc., 555 U.S. at 22.  That harm must be immediate in nature.  Caribbean Marine Servs.

13 Co., Inc. v. Baldridge, 844 F.2d 668, 675 (9th Cir. 1988).  While Plaintiff claims that her

14 son's expulsion from the District and his exclusion from the District's educational

15 programs in itself provides the requisite irreparable harm on a "daily" basis, her own

16 actions belie any such contention.  First and foremost, Plaintiff's own refusal to consent

17 to A.V.'s evaluation precluded him from being assessed earlier for IDEA eligibility.

18 Second, Plaintiff failed to appear before the December 16, 2014, Administrative Hearing

19 Panel where the Panel recommended that A.V. be expelled with continuing education

20 provided through the District's community school program.  Third, Plaintiff similarly failed

21 to participate in the January 6, 2016, readmission panel meeting at which time Plaintiff's

22 suspension was continued another year given his failure to comply with the various

23 conditions for readmission outlined in A.V.'s January 14, 2016, rehabilitation plan.

24 Significantly, the evidence indicates that Plaintiff received notice of both of these

25 hearings and failed to appeal either decision.  Fourth, if A.V.'s harm was both imminent

26 and irreparable as Plaintiff contends, Plaintiff's decision to wait until February 9, 2016, to

27 challenge the March 2, 2015, IEP and its provision of a FAPE makes no sense.

28 ///

1    Plaintiff also cannot convincingly claim that the balance of equities or public

2    interest tips strongly in his favor inasmuch as A.V. has been given other educational

3    options, both through the District's Opportunity School while expulsion proceedings were

4    pending and in Kern County's Sillect Community Day School thereafter.  On the other

5    hand, as the District points out, reinstating A.V. in the District's mainstream educational

6    programs where Plaintiff has not appealed the District's expulsion orders and has

7    apparently not complied with the District's stated conditions for readmission would send

8    the wrong message and tip the competing equities in the opposite direction.

9    Finally, it must be emphasized again that in requesting that the Court order the

10   District to affirmatively reinstate A.V. to its educational programs, Plaintiff requests more

11   than maintenance of the existing status quo while this case is being litigated.  Instead,

12   Plaintiff's request is mandatory rather than prohibitive in nature.  As already indicated,

13   the Ninth Circuit has made clear that such injunctions are "particularly disfavored" and

14   should not be granted  "unless the facts and law clearly favor the moving party.'"

15   LGS Architects v. Concordia Homes of Nev., 434 F.3d at 1158;  Stanley v. Univ. of S.

16   Cal., 13 F.3d at 1320 (9th Cir. 1994).  The circumstances of this case do not meet those

17   exacting requirements.

18

19                                    **CONCLUSION**

20

21   For all the reasons set forth above, Plaintiff's Amended Motion for Preliminary

22   Injunction (ECF No. 48) is DENIED.[10]

23   IT IS SO ORDERED.

24   Dated:  June 13, 2016

25

26                                    _____
                                       MORRISON C. ENGLAND, JR.
                                       UNITED STATES DISTRICT JUDGE

27   ───────────────────
          [10] The Court notes that the District filed objections to certain evidence proffered by Plaintiff in
28   support of her Motion.  Because the Court did not rely on that evidence in making its decision, it need not
     rule on those objections and declines to do so.