1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   A.V., a minor, by parent and Guardian          No.  1:15-cv-00246-MCE-JLT
     ad Litem CONCEPCION VARELA,
12
                     Plaintiff,
13                                                   **AMENDED MEMORANDUM AND
           v.                                        ORDER**[1]
14
     PANAMA-BUENA VISTA UNION
15   SCHOOL DISTRICT, DOES 1-20,

16                   Defendants.

17

18         Through the present lawsuit, Plaintiff  Concepcion Varela ("Plaintiff"), as parent

19   and guardian ad litem for her minor son, A.V., challenges various actions taken by

20   Defendant Panama-Buena Vista School District ("District") with respect to A.V.'s

21   educational placement.  Plaintiff has already pursued two special education "due

22   process" proceedings in accordance with the provisions of the Individuals with

23   Disabilities Education Act., 20 U.S.C. § 1400, et seq. ("IDEA"), to rectify what she alleges

24   were unlawful steps taken by the District against her son.  She now appeals adverse

25   decisions rendered by the Office of Administrative Hearings ("OAH") and, in addition to

26   IDEA violations, also claims violations of § 504 of the Rehabilitation Act of 1973, 29

27         [1] This Memorandum and Order is identical to its June 9, 2016 predecessor (ECF No. 83) except
     that the prior footnote 11 was inserted in error and has now been omitted.  The first full paragraph on page
28   7 has consequently been amended.

U.SC. § 701 et seq. ("Section 504"), as well as discrimination on the basis of disability and national origin.

Presently before the Court is the District's Motion to Dismiss (ECF No. 23) this action in its entirety on grounds that Plaintiff failed to timely serve her original Complaint in contravention of Federal Rules of Civil Procedure 4(m) and 12(b)(5).[2]  The District further moves to dismiss Plaintiff's claims brought pursuant to Section 504 for both failure to exhaust her administrative remedies and failure to state a claim.  Finally, the District contends that Plaintiff's discrimination claims are inadequately pled as well.  For the reasons set forth below, the District's Motion is DENIED in part and GRANTED in part.[3]

# BACKGROUND[4]

Plaintiff enrolled A.V. at the District's Stonecreek Junior High School prior to the first day of the 2014-15 term.  A.V. was twelve years old at the time.  On August 18, 2014, the first day of school, Plaintiff provided the District with a copy of A.V.'s most recent Section 504 plan along with a behavior support plan from the Bakersfield City School District, where A.V. had previously attended school.  Plaintiff claims she told the District that A.V. had a medical diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

A.V. began to have behavioral incidents at school as early as August 21, 2014, just three days after classes commenced.  He was referred to the office that day for

---

[2] All further references to "Rule" or "Rules" are to the Federal Code of Civil Procedure unless otherwise noted.

[3] Having determined that oral argument would not be of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

[4] The facts in this section are derived from the allegations as set forth in Plaintiff's Amended Complaint, as augmented by additional facts drawn from the OAH's decisions in this matter attached as Exhibits A, B, and C to the Complaint and Amended Complaint.

1    provoking a fight with another student and for being combative.  Thereafter, on

2    August 27, 2014, A.V. allegedly threatened to injure another student and is also

3    purported to have bullied, intentionally harassed and intimidated a group of students.

4    This caused the District to suspend A.V. two days.  That same day, the District held a

5    Section 504 team meeting and developed a Section 504 Accommodation Plan for

6    Student.  Plaintiff attended the meeting with the assistance of a Spanish interpreter

7    provided by the District and accompanied by an educational advocate.   At that time, the

8    District believed that A.V.'s behaviors could be addressed through accommodations in

9    his Section 504 plan, and Plaintiff consented to the District's proposals in that regard.

10        On September 11, 2014, after the District intervention counselor observed A.V.

11    grabbing a female student's buttocks, A.V. was suspended another three days and the

12    District scheduled a Section 504 Manifestation Determination Meeting for September 18,

13    2014.[5]   In the meantime, on September 15, 2014, Plaintiff sent the District a handwritten

14    letter in English requesting that A.V. be assessed for eligibility for special education

15    services.  Thereafter, at the September 18, 2014, meeting, the District's psychologist told

16    Plaintiff, who again participated through a Spanish interpreter, that the District wanted to

17    assess Plaintiff for special education.[6]  After Plaintiff told District staff that she thought

18    A.V. did better with male teachers and counselors, the District recommended that A.V.

19    transfer to Thompson Junior High School where more support from male staff members

20    was available.  Plaintiff consented to that transfer.

21        A.V. began attending Thompson the following day, September 19, 2014. On

22    September 22, 2014, school psychologist Brittany Gentry generated a Consent for

23    Assessment of A.V.'s special education eligibility that included both a functional

24    behavioral assessment and an evaluation of any emotional disturbance and specific

25    learning disability.  Ms. Gentry made that decision both because of Plaintiff's concerns

26    _____

      [5] The purpose of a Manifestation Determination Hearing under the Rehabilitation Act is to
27    determine whether the offending behaviors arise from the student's identified disability, here ADHD, as
      opposed to other sources.

28        [6] It appears that the psychologist was not aware of Plaintiff's recent letter at that time.

3

and because she believed A.V.'s numerous defiant and inappropriate behaviors made such an evaluation appropriate.  According to the District, it mailed the Consent for Assessment to Plaintiff at her address of record, but it was not returned.  The initial Consent form was generated in English because that was the language Plaintiff had used in her written letter requesting a special education evaluation.

Nonetheless, in a subsequent Section 504 amendment meeting on October 7, 2014, which Plaintiff attended, District Special Education Assistant Director Janet Clark claims she provided Plaintiff with, and reviewed, a Spanish language version of the September 22, 2014, assessment.  Ms. Clark and school psychologist Matt Harper told Plaintiff why the District wanted to perform an assessment, explaining that an evaluation was needed before determining what additional supports and services A.V. might need. When Ms. Clark asked Plaintiff to sign the Consent, she states that Plaintiff declined on grounds that she wanted to discuss the document with her husband.  On October 15, 2014, after having not received the Consent back, another Spanish version was sent which, like the earlier English version mailed on September 22, 2014, was apparently never received back as undeliverable.

On November 19, 2014, after A.V. continued to engage in appropriate behaviors, the District held yet another Section 504 Manifestation Determination team meeting at which time Ms. Clark claims she provided another Spanish version of the Consent form, in the presence of Plaintiff's Spanish-speaking educational advocate and with the assistance of a Spanish interpreter.  Plaintiff declined to sign, and, according to the OAH's November 22, 2014 decision, Plaintiff denied at the due process hearing that she ever received it.  Although the District claims that it followed this up by sending additional copies by mail on November 22, 2014, December 2, 2014, and December 4, 2014, Plaintiff again denied receiving any of the forms.  The OAH hearing officer found this testimony not to be credible, particularly in the face of numerous District witnesses who "consistently and credibly" testified that she had been given the Consent forms directly at various Section 504 meetings with the forms explained through an interpreter, as well as

4

1   District testimony that it had mailed copies of the documents in both English and Spanish

2   to her address of record  on at least four different occasions without receiving them back

3   as undeliverable.

4   According to Plaintiff, at the time of the November 14, 2014 meeting, the Section

5   504 team determined that A.V's behavior, which had allegedly included, inter alia,

6   sexually inappropriate conduct, defiance, failure to follow directions, and banging his

7   head against the wall in the principal's office, was not related to his ADHD condition.

8   The District decided to expel Plaintiff based on this behavior.

9   On November 21, 2014, Plaintiff filed an expedited due process complaint[7] with

10   regard to the discipline Plaintiff had received and the fact that Plaintiff's disabilities had

11   not been adequately considered.[8]  In accordance with the legal requirement that such an

12   expedited hearing be conducted in short order, proceedings before an OAH hearing

13   officer were conducted between January 6, 2015 and January 8, 2015.  By decision

14   dated January 23, 2015, the hearing officer denied Plaintiff's complaint on grounds that

15   because Plaintiff had not allowed the District to evaluate A.V. for special education

16   eligibility, she did not meet her burden of establishing that A.V. was a child with a

17   disability eligible for special education supports and services prior to being expelled in

18   November of 2014.  The fact that Plaintiff finally returned a signed Consent form on the

19   first day of the hearing, January 6, 2015, was deemed to be of no moment since no

20   consent was forthcoming prior to A.V.'s expulsion despite numerous attempts by the

21   District to secure such consent beforehand.

22

23   [7] An expedited due process complaint is made pursuant to 34 C.F.R. §§ 300.530 and 300.532 and
challenges, inter alia, discipline meted out to a disabled student that changes the student's placement.  An
24   expedited hearing can also be requested for a manifestation determination that the student's offending
conduct was or was not caused by his or her disability.  See 34 C.F.R. § 300.530(e).  A non-expedited
25   complaint, on the other hand, may generally challenge the provision of a Free and Appropriate Public
Education to disabled students as guaranteed by the IDEA  under 34 C.F.R. §§ 300-507-300.516.

26   [8] An earlier October 6, 2014 expedited complaint was dismissed by Plaintiff on November 3, 2014.
Both the October 6, 2014 and November 21, 2014 complaints, however, also included non-expedited
27   portions, which, as delineated below, were ultimately adjudicated through the OAH's June 11, 2015
decision.

28

On September 7, 2015, Plaintiff filed an appeal of the OAH hearing dated January 23, 2015, as well as a December 10, 2014, decision by the hearing officer imposing sanctions on Plaintiff's counsel.[9]  According to Plaintiff's counsel, she had to file the appeal to protect her rights with respect to those decisions even though the related non-expedited portion of her claims had not yet been resolved.[10]

A hearing on the non-expedited claims, which included claims that the District ailed to timely assess A.V. in all areas of suspected need for special education placements, as well as claims that the District had deprived Plaintiff of the opportunity to meaningfully participate in Plaintiff's IDEA program by failing to translate disciplinary documents into Spanish, took place over the course of three days between April 15, 2015 and April 17, 2015.  No decision on the non-expedited claims was forthcoming until June 11, 2015.  That decision was in Plaintiff's favor to the extent the hearing officer concluded that the District had sufficient information between August 18, 2014 and October 6, 2014 to trigger its duty to assess A.V. for special education eligibility.  Even though A.V. did not begin classes until August 18, 2014, the hearing officer opined that because Plaintiff had told District personnel that A.V. had previously been expelled from Bakersfield City School District for sexual battery, and because Plaintiff's aggressive and defiant behaviors manifested almost immediately, a duty to assess was triggered from the onset.  Moreover, because the District did not provide a copy of the Consent form to Plaintiff in Spanish until October 7, 2014, its failure to properly assess continued until the preceding day.  Nonetheless, given Plaintiff's repeated failure to return the Consent form in a timely fashion once it had been provided to her as delineated above, the hearing

---

[9] That decision sanctioned Plaintiff's attorney for filing its expedited due process complaint before the attorney had reviewed student records to determine whether the issues she raised were in fact ripe for adjudication.  In particular, the OAH hearing officer found that Plaintiff's attorney had not determined whether the records substantiated that A.V. had reached ten days of suspension, the number of days which triggers a potential remedy under the IDEA.

[10] California Education Code § 56505(k) provides that any appeal of an OAH decision be made within 90 days.

1    officer found that no IDEA "child find"[11] obligation was breached after October 7, 2014.

2    In addition, the hearing officer rejected Plaintiff's claim that the District had to translate all

3    disciplinary documents from A.V.'s cumulative file for Plaintiff, or to provide Plaintiff

4    written explanations in Spanish for each disciplinary event, in order to ensure her

5    meaningful participation in the IDEA process.

6          On August 28, 2015, Plaintiff filed an Amended Complaint in this matter which

7    appealed, in addition to the December 10, 2014 sanctions order and the January 23,

8    2015 decision on Plaintiff's expedited claims, also the OAH's June 11, 2015 decision on

9    the non-expedited portions of Plaintiff's claim.

10          On September 3, 2015, the District entered a general appearance in this lawsuit

11   in order to facilitate court-sponsored mediation, and the parties agreed that Plaintiff

12   would not serve her Amended Complaint unless and until mediation was unsuccessful.

13   ECF Nos. 9, 11.  The terms of the stipulation preserved the District's right to challenge

14   inadequate service.  Once mediation ultimately proved unsuccessful in resolving the

15   matter, the District was thereafter served pursuant to Court order with the Amended

16   Complaint on or about November 23, 2015, although no proof of service was filed with

17   the court.  ECF No. 22.

18          As indicated above, the District now urges the Court to dismiss Plaintiff's

19   Complaint because the original version was not served within 120 days after its filing on

20   September 7, 2015 as mandated by Rule 4(m).  The District further alleges that Plaintiff's

21   Section 504 claims, as well as her claim for discrimination based on disability and

22   national origin, fail to state a viable claim in any event.  Plaintiff on the other hand,

23   argues that because the appeal could not proceed until the hearing on all issues

24   presented by Plaintiff's claim had ended, she had good cause for not serving her initial

25   ///

26   _____

27          [11] Under the IDEA, "child find' refers to the obligation to identify, locate and evaluate all children
     with disabilities within the District's geographical boundaries.  20 U.S.C. § 1412(a)(3)(A); 34 C.F.R.
28   § 300.11; Cal. Ed. Code § 56300.

1  complaint within 120 days and instead waiting until the hearings had ended in their

2  entirety before filing an amended complaint and thereafter effectuating service.

3

4  **STANDARDS**

5

6  ### A.  Motion to Dismiss for Failure to Timely Serve Complaint

7  Rule 4(m), as it existed at the time Plaintiff's original complaint was filed on

8  February 17, 2015, required that service of a summons and complaint be made within

9  120 days after the filing of the complaint.[12]  Fed. R. Civ. P. 4(m).  Rule 12(b)(5)

10  authorizes the filing of a motion to dismiss for insufficient service if service is not made

11  within the requisite period.  If a plaintiff shows good cause for failure to timely serve,

12  however, the court must extend the time for an appropriate period.  Fed. R. Civ. P. 4(m).

13  Rule 4(m) contains both a mandatory and a discretionary component.  First, if a

14  plaintiff shows good cause for the defective service, the district court must extend the

15  time period for service.  In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001).  Second, with

16  respect to the discretionary component of the rule, the district court has discretion to

17  grant an extension even absent good cause.  Mann v. Am. Airlines, 324 F.3d 1088, 1090

18  (9th Cir. 2003).  The court's discretion in that regard has been broadly interpreted, and

19  no specific guidelines apply.  In re Sheehan, 253 F.3d at 1213.

20  Rule 4(m) applies to civil actions like this one filed to appeal administrative

21  decisions issued pursuant to the IDEA.  S.J. v. Issaquah Sch. Dist. No. 411, 470 F.3d

22  1288, 1289 (9th Cir. 2006).

23  ### B.  Motion to Dismiss for Failure to State a Viable Claim

24  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

25  allegations of material fact must be accepted as true and construed in the light most

26  favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

27  _____

28  [12] Rule 4(m) has since been amended, effective December 1, 2015, to shorten the requisite time for service from 120 to 90 days.

1    (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

2    showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of

3    what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>,

4    550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  A

5    complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual

6    allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to

7    relief requires more than labels and conclusions, and a formulaic recitation of the

8    elements of a cause of action will not do."  <u>Id.</u> (internal citations and quotations omitted).

9    A court is not required to accept as true a "legal conclusion couched as a factual

10   allegation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at

11   555).  "Factual allegations must be enough to raise a right to relief above the speculative

12   level."  <u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller,

13   <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) (stating that the pleading must

14   contain something more than "a statement of facts that merely creates a suspicion [of] a

15   legally cognizable right of action")).

16        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

17   assertion, of entitlement to relief."  <u>Id.</u> at 555 n.3 (internal citations and quotations

18   omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how

19   a claimant could satisfy the requirements of providing not only 'fair notice' of the nature

20   of the claim, but also 'grounds' on which the claim rests."  <u>Id.</u> (citing Wright & Miller,

21   <u>supra</u>, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief

22   that is plausible on its face."  <u>Id.</u> at 570.  If the "plaintiffs . . . have not nudged their claims

23   across the line from conceivable to plausible, their complaint must be dismissed."  <u>Id.</u>

24   However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that

25   actual proof of those facts is improbable, and 'that a recovery is very remote and

26   unlikely.'"  <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

27        A court granting a motion to dismiss a complaint must then decide whether to

28   grant leave to amend.  Leave to amend should be "freely given" where there is no

1   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

2   to the opposing party by virtue of allowance of the amendment, [or] futility of the

3   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

4   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

5   be considered when deciding whether to grant leave to amend).  Not all of these factors

6   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

7   carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

8   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

9   "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

10  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

11  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

12  1989) ("Leave need not be granted where the amendment of the complaint . . .

13  constitutes an exercise in futility . . . .")).

14

15                                    **ANALYSIS**

16

17      **A.  Insufficient Service of Process**

18          The District moves to dismiss Plaintiff's lawsuit in its entirety on grounds that

19  Plaintiff's original Complaint, filed on September 7, 2015, was not served within the

20  120-day period set forth in Rule 4(m).  Plaintiffs argues she had "good cause" to deviate

21  from the otherwise mandated service period because the expedited and non-expedited

22  portions of her claims were inextricably connected, stemmed from the same October 6,

23  2014, and November 17, 2014, due process claims, entailed a common nexus of fact,

24  and involved related hearings before the same OAH hearing officer.  The Court agrees.

25          It is clear that the original complaint was not served in a timely fashion until Rule

26  4(m), since it appears undisputed that no service of process here occurred until

27  November 23, 2015, more than a year after this action was initially filed.  This

28  shortcoming can nonetheless be overlooked if, as Plaintiff alleges, she had "good cause"

1    for delaying service until after her Amended Complaint was filed on August 28, 2015.

2    Service did occur within 120 days of that filing.

3         For instant purposes, the term "good cause" means excusable neglect.

4    Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991).  Here, as indicated above,

5    Plaintiff claims she believed she could wait on service until all her claims, both expedited

6    and non-expedited, were administratively resolved.  She points out that the claims were

7    filed together, were factually interrelated, and were heard by the same officer.  Her

8    contention that the hearings occurred sequentially through the same process has

9    support in the record before the Court.  The exhibits used in the expedited hearing

10   continued to be utilized in the hearing for the remaining non-expedited claims, and

11   Administrative Law Judge Adrienne Krikorian, the hearing officer who presided over both

12   hearings, found in her April 3, 2015, Prehearing Conference Order that the hearing for

13   both the expedited and non-expedited portions of the claim began on January 6, 2015,

14   the first day of the hearing on the expedited claims.  Order, Exh. 1 to Pl.'s Opp'n, p. 4.[13]

15   In attempting to justify her decision to refrain from serving her complaint until all the

16   related issues had been decided, Plaintiff invokes the rationale of the so-called final

17   judgment rule, which in order to avoid the costs of multiple appeals and in the interest of

18   judicial economy, discourages the piecemeal appeal of rulings in a case so that no

19   appeal need be taken until a case has been resolved in its entirety.  While Plaintiff

20   concedes that the doctrine is technically not applicable to the district court's review of an

21   IDEA case in the same way it applies to the appellate court review of a district court's

22   rulings, there is caselaw that recognizes that its underlying principles nonetheless apply.

23   As the Ninth Circuit has recognized, "allowing [a party] to appeal aspects of the due

24   process proceedings in a piecemeal fashion would run counter to the IDEA and would

25   ///

26   _____

27        [13] It should also be noted that the District itself appears to concede that Plaintiff's "original
     complaint was phased into two hearings" (District's Reply, 5:25), which would appear to support the
28   argument that the claims were not concluded until both aspects had been adjudicated even though each
     decision may have addressed its own unique issues.

1   hinder efficient resolution of the administrative proceedings." <u>M.M. v. Lafayette</u>,

2   681 F.3d 1082, 1089 (9th Cir. 2012).

3       Here, Plaintiff points to the procedural tension between the provisions of the

4   California Education Code, which requires at § 56505(k) that any appeal of an OAH

5   decision be made within 90 days, and the rationale of the final judgment rule which

6   frowns upon the filing of any appeal until all aspects of a case have been concluded.

7   Plaintiff argues that while she filed her appeal in order to preserve her appellate rights

8   under the Education Code, she was nonetheless justified in waiting to move forward with

9   the prosecution of her appeals, through service of process, until the remaining non-

10  expedited claims were decided.  While the Court believes the safer practice would have

11  been to nonetheless serve the initial Complaint in order to avoid any question that

12  service was timely effectuated, it nonetheless concludes that any neglect in failing to do

13  so was excusable under the circumstances of this case.  Consequently, the Court

14  exercises its discretion in determining that service of the action following the filing of the

15  Amended Complaint was sufficient.  While the District avers it was prejudiced by the

16  delay because it believed that Plaintiff's failure to serve amounted to an abandonment of

17  the appeal, the Court is unpersuaded by that argument.  The District's Motion to Dismiss

18  for failure to serve is accordingly DENIED.[14]

19      **B.  Rule 12(b)(6) Motion to Dismiss**

20          **1.  Section 504 Claim**

21      In her Third Count, Plaintiff alleges that A.V. failed to obtain a legally compliant

22  Manifestation Determination review under Section 504, since the District failed to

23  adequately consider his ADHD disability in determining the cause of the behaviors that

24         [14] The Court notes that the District has filed a Request for Judicial Notice as to certain court
25  documents filed in other cases for which Plaintiff's counsel, Nicole Hodge Amey, has acted as counsel.
    Those Requests, made pursuant to Federal Rule of Evidence 201, are unopposed and are therefore
26  GRANTED.  Plaintiff has filed objections to some of the documents in question, however, on various
    grounds.  Because the Court did not rely on those documents in reaching its decision in this matter, the
27  Court need not rule on those objections and declines to do so.  In addition, although the District has also
    filed objections as to portions of Ms. Amey's Declaration, the Court similarly failed to rely on those
28  particular allegations in deciding this Motion and consequently declines to rule on those objections for the
    same reason.

1   led to his suspensions and subsequent expulsion.  Pl.'s Am. Compl., ¶¶ 63-64.  In

2   alleging that Plaintiff's Section 504 claim is factually insufficient, the District states only

3   that, according to the OAH's January 11, 2015, expedited decision, two Section 504

4   manifestation determination hearings were held as to two separate behavior incidents

5   involving A.V., with the decision on both occasions being that the behaviors at issue

6   were not manifestations of his ADHD.  January 11, 2015, Expedited Decision, Exh. B. to

7   Pl.'s Compl., ¶ 12.  That nonetheless ignores Plaintiff's contention that any manifestation

8   determination review was not legally compliant.  Therefore, the District has not shown

9   that Plaintiff's Section 504 claim fails to state facts sufficient to support a viable claim.

10          The District's argument that the Section 504 claim also fails because Plaintiff

11   failed to exhaust administrative remedies is no more successful.   The Ninth Circuit has

12   held that a non-federal employee making a claim under Section 504 does not have to

13   exhaust administrative remedies prior to bringing suit.  <u>Smith v. Barton</u>, 914 F.2d 1330,

14   1338 (9th Cir. 1990).[15]  The District's challenges to Plaintiff's Section 504 claims

15   consequently fail.

16                          **2.   Discrimination Claims**

17          The District correctly points out, however, that Plaintiff's discrimination claims fail

18   to cite to a single statute or constitutional provision for authority.  While those allegations

19   appear to be contained within the facts comprising "Count Three-Manifestation

20   Determination under 504 of the Rehabilitation Act," the discrimination and retaliation

21   sections nonetheless follow a separate "Discrimination and Retaliation" heading and, like

22   Plaintiff's other counts, begin by incorporating previous factual allegations contained in

23   the Amended Complaint.[16]

24

25          [15] While circuits have split on this issue, this Court must follow the Ninth Circuit's determination
     that no exhaustion is required.  <u>See</u> <u>Smith v. Barton</u>, <u>supra</u>; <u>Cheeney v. Highland Comm. College</u>, 15 F.3d
26   79, 82 (7th Cir. 1994) (exhaustion of administrative remedies not mandated by the Rehabilitation Act); <u>but
     see</u> <u>Downey v. Runyon</u>, 160 F.3d 139, 145 (2d Cir. 1998) (holding a plaintiff obliged to exhaust
27   administrative remedies prior to bringing claim under the Rehabilitation Act).

          [16] To confuse matters further, the caption to Plaintiff's Amended Complaint alleges discrimination
28   based on disability and national origin and contains no mention of retaliation.

                                                13

1    Absent any clear indication as to the legal basis for Plaintiff's discrimination

2  claims, those claims fail to state a viable claim on that ground alone.  The District's

3  Motion to Dismiss Plaintiff's discrimination and retaliation claims must therefore be

4  GRANTED.

5

6                                  **CONCLUSION**

7

8    For all the reasons set forth above, the District's Motion to Dismiss (ECF No. 23)

9  is GRANTED with leave to amend in part and DENIED in part consistent with the

10  foregoing.  Not later than twenty (20) days following the date this memorandum and

11  order is electronically filed, Plaintiff may, but is not required to, file an amended

12  complaint.  If no amended complaint is filed by that date, the causes of action dismissed

13  by virtue of this order will be dismissed with prejudice upon no further notice to the

14  parties.

15    IT IS SO ORDERED.

16  Dated:  June 13, 2016

17

18                                  _____
                                    MORRISON C. ENGLAND, JR.
19                                  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

                                         14