UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.V, a minor, by parent and Guardian ad Litem, CONCEPCION VARELA,<br><br>Plaintiff,<br><br>v.<br><br>PANAMA-BUENA VISTA UNION SCHOOL DISTRICT; RITA PIERUCCI, (in her official capacity and as an individual), JANET CLARK, (in her official capacity), DARRYL POPE, (in his official capacity and as an individual), CINDY KOEPP-ROMERO, (in her official capacity), PATRICK CALLEY, (in his official capacity and as an individual), JANE COTHERN, (in her official capacity and as an individual), BRITTANY GENTRY, (in her official and individual capacity), MATT HARPER (in his official capacity), Does 9-20,<br><br>Defendants. | No. 1:15-cv-00246-MCE-JLT<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff A.V. ("Plaintiff"), by his parent and guardian ad litem, Concepcion Varela ("Plaintiff's mother" or "Ms. Varela"), challenges various actions taken by Defendant Panama-Buena Vista School District ("District") with respect to A.V.'s educational placement. Plaintiff has already pursued two special education

"due process" proceedings in accordance with the provisions of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), to rectify what he alleges were unlawful steps taken by the District against him.  He now appeals adverse decisions rendered by the Office of Administrative Hearings ("OAH") following those proceedings and, in addition to IDEA violations, also claims violations of § 504 of the Rehabilitation Act of 1973, 29 U.SC. § 701 et seq. ("Section 504")  as well as discrimination and retaliation on the basis of disability and national origin under both Section 504 and Title II of the Americans with Disabilities Act ("ADA").

Presently before the Court is the District's Motion to Strike Plaintiff's Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(f)[1] on grounds that the SAC was filed beyond the time parameters permitted by the Court, and further purports to add new Defendants without obtaining leave of court to do so.  Alternatively, in the event the Court elects not to strike Plaintiff's SAC in its entirety, the District moves to dismiss Plaintiff's Fourth, Fifth and Sixth Counts on grounds that:  1) the District has sovereign immunity for any claims asserted against it under either 42 U.S.C. § 1983 or California's Unruh Act, consequently entitling the District to dismissal under Rule 12(b)(1); and 2) any remaining discrimination claims should be dismissed for failure to state a viable claim pursuant to Rule 12(b)(6).  For the reasons set forth below, the District's Motion is DENIED in part and GRANTED in part.[2]

///
///
///
///
///
///

---

[1] All further references to "Rule" or "Rules" are to the Federal Code of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument was not of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

2

# BACKGROUND[3]

Plaintiff's mother enrolled A.V. at the District's Stonecreek Junior High School prior to the first day of the 2014-15 school term. Plaintiff was twelve years old at the time of that enrollment. On August 18, 2015, the first day of school, Ms. Varela provided the District with a copy of A.V.'s most recent Section 504 plan along with a behavior support plan from the Bakersfield City School District where A.V. had previously attended classes. Plaintiff's mother claims she told the District that A.V. had a medical diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

A.V. began to have behavioral incidents at school as early as August 21, 2015, just three days after classes commenced. He was referred to the office that day for provoking a fight with another student and for being combative. Thereafter, on August 27, 2014, A.V. allegedly threatened to injure another student and is also purported to have bullied, intentionally harassed and intimidated a group of students. This caused the District to suspend A.V. two days. That same day, however, the District also held a Section 504 team meeting and developed a Section 504 Accommodation Plan for Student. Ms. Varela attended the meeting with the assistance of a Spanish interpreter provided by the District and accompanied by an educational advocate. At that time, the District believed that A.V.'s behaviors could be addressed through accommodations in his Section 504 plan, and Plaintiff's mother consented to the District's proposals in that regard.

On September 11, 2014, after the District intervention counselor observed A.V. grabbing a female student's buttocks, A.V. was suspended for an additional three days, and the District scheduled a Section 504 "Manifestation Determination" meeting for

///

///

---

[3] The facts in this section are derived from the allegations as set forth in Plaintiff's SAC, as augmented by additional facts drawn from the OAH's decisions in this matter attached as Exhibits A, B, and C to the Complaint and Amended Complaint.

September 18, 2014.[4] In the meantime, on September 15, 2014, Plaintiff's mother sent the District a handwritten letter in English requesting that A.V. be assessed for eligibility for special education services. Thereafter, at the September 18, 2014 meeting, the District's psychologist told Ms. Varela, who again participated through a Spanish interpreter, that the District wanted to assess A.V. for special education (it appears that the psychologist was not aware of Ms. Varela's recent letter at that time). After Plaintiff's mother told District staff that she thoughT A.V. did better with male teachers and counselors, the District recommended that A.V. transfer to Thompson Junior High School where more support from male staff members was available. Ms. Varela consented to that transfer.

     A.V. began attending Thompson the following day, September 19, 2014. On September 22, 2014, school psychologist Brittany Gentry generated a "Consent for Assessment" of A.V.'s special education eligibility that included both a functional behavioral assessment and an evaluation of any emotional disturbance and specific learning disability. Ms. Gentry made that decision both because of Ms. Varela's concerns and because she believed A.V.'s numerous defiant and inappropriate behaviors made such an evaluation appropriate. According to the District, it mailed the Consent for Assessment to Ms. Varela at her address of record but it was not returned. The initial Consent form was generated in English because that was the language Plaintiff's mother had used in her written letter requesting a special education evaluation.

     Nonetheless, in a subsequent Section 504 amendment meeting on October 7, 2014, which Ms. Varela attended, District Special Education Assistant Director Janet Clark claims she provided Plaintiff's mother with, and reviewed, a Spanish language version of the September 22, 2014 assessment. Ms. Clarke and school psychologist Matt Harper allegedly told Ms. Varela why the District wanted to perform an assessment of her son, explaining that an evaluation was needed before determining what additional

---

[4] The purpose of a Manifestation Determination Hearing under the Rehabilitation Act is to determine whether the offending behaviors arise from the student's identified disability, here ADHD, as opposed to other sources.

4

supports and services A.V. might need.  When Ms. Clark asked Ms. Varela to sign the Consent, she states that Plaintiff's mother declined on grounds that she wanted to discuss the document with her husband.  On October 15, 2014, after having not received the Consent back, another Spanish version was sent which, like the earlier English version mailed on September 22, 2014, was apparently never received back as undeliverable.

On November 14, 2014, after A.V. continued to engage in inappropriate behaviors, the District held yet another Section 504 Manifestation Determination team meeting at which time Ms. Clark claims she provided another Spanish version of the Consent form, in the presence of Ms. Varela's Spanish speaking educational advocate and with the assistance of a Spanish interpreter.  Plaintiff's mother allegedly declined to sign, and according to the OAH's November 22, 2014 decision, she denied at the due process hearing that she ever received it.  Although the District claims that it followed this up by sending additional copies by mail on November 22, 2014, December 2, 2014, and December 4, 2014, Ms. Varela again denied receiving any of the forms.  The OAH hearing officer found this testimony not to be credible, particularly in the face of numerous District witnesses who "consistently and credibly" testified that she had been given the Consent forms directly at various Section 504 meetings with the forms explained through an interpreter, as well as District testimony that it had mailed copies of the documents in both English and Spanish to the parent's address of record on at least four different occasions without receiving them back as undeliverable.

According to Plaintiff, at the time of the November 14, 2014, meeting, the Section 504 team determined that A.V's behavior, which had allegedly included, <u>inter alia</u>, sexually inappropriate conduct, defiance and failure to follow directions, and banging his head against the wall in the principal's office, was not related to his ADHD condition.  The District decided to expel Plaintiff based on this behavior.

///

///

5

On November 21, 2014, Plaintiff's mother filed an "expedited due process complaint"[5] with regard to the discipline her son had received and the fact that Plaintiff's disabilities had not been adequately considered.[6] In accordance with the legal requirement that such an expedited hearing be conducted in short order, proceedings before an OAH hearing officer were conducted between January 6, 2015, and January 8, 2015. By decision dated January 23, 2015, the hearing officer denied Plaintiff's complaint on grounds that because Plaintiff's mother had not allowed the District to evaluate A.V. for special education eligibility, she did not meet her burden of establishing that A.V. was a child with a disability eligible for special education supports and services prior to being expelled in November of 2014. The fact that Ms. Varela finally returned a signed Consent form on the first day of the hearing, January 6, 2015, was deemed to be of no moment since no consent was forthcoming prior to A.V.'s expulsion despite numerous attempts by the District to secure such consent beforehand.

On February 17, 2015, Plaintiff's mother filed an appeal in this Court of the OAH hearing dated January 23, 2015, as well as an earlier decision by the hearing officer imposing sanctions on Plaintiff's counsel issued on December 10, 2014. According to Plaintiff's counsel, Ms. Varela had to file that appeal to protect her rights with respect to those decisions even though the related non-expedited portion of her claims had not yet been resolved.[7]

///

---

[5] An expedited due process complaint is made pursuant to 34 CFR §§ 300.530 and 300.532 and challenges, inter alia, discipline meted out to a disabled student that changes the student's placement. An expedited hearing can also be requested for a manifestation determination that the student's offending conduct was or was not caused by his or her disability. See 34 CFR § 300.530(e). A non-expedited complaint, on the other hand, may generally challenge the provision of a Free and Appropriate Public Education ("FAPE") to disabled students as guaranteed by the IDEA under 34 CFR §§ 300-507-300.516.

[6] An earlier October 6, 2014, expedited complaint was dismissed by Plaintiff's mother on November 3, 2014. Both the October 6, 2014 and November 21, 2014 complaints, however, also included non-expedited portions, which, as delineated below, were ultimately adjudicated through the OAH's June 11, 2015, decision.

[7] California Education Code § 56505(k) provides that any appeal of an OAH decision be made within 90 days.

A hearing on the non-expedited claims, which included claims that the District had failed to timely assess A.V. in all areas of suspected need for special education placements, as well as claims that the District had deprived Plaintiff's mother of the opportunity to meaningfully participate in Plaintiff's IDEA program by failing to translate disciplinary documents into Spanish, took place over the course of three days between April 15, 2015, and April 17, 2015. No decision on the non-expedited claims was forthcoming until June 11, 2015. That decision was in Plaintiff's favor to the extent the hearing officer concluded that the District had sufficient information between August 18, 2014, and October 6, 2014, to trigger its duty to assess A.V. for special education eligibility. Even though A.V. did not begin classes until August 18, 2014, the hearing officer opined that because Plaintiff's mother had told District personnel that A.V. had previously been expelled from Bakersfield City School District for sexual battery, and because Plaintiff's aggressive and defiant behaviors manifested almost immediately, a duty to assess was triggered from the onset. Moreover, because the District did not provide a copy of the Consent form to Plaintiff's mother in Spanish until October 7, 2014, its failure to properly assess continued until the preceding day. Nonetheless, given Ms. Varela's repeated failure to return the Consent form in a timely fashion once it had been provided to her as delineated above, the hearing officer found that no IDEA child find obligation was breached after October 7, 2014. In addition, the hearing officer rejected Plaintiff's claim that the District had to translate all disciplinary documents from A.V.'s cumulative file for Ms. Varela, or to provide Ms. Varela written explanations in Spanish for each disciplinary event, in order to ensure her meaningful participation in the IDEA process.

On August 28, 2015, Plaintiff filed a First Amended Complaint ("FAC") in this matter which appealed, in addition to the OAH's January 23, 2015 decision as well as December 10, 2014 sanctions order, also the OAH's June 11, 2015 decision on the non-expedited portions of Plaintiff's

///

claim.[8]  On September 3, 2015, the District entered a general appearance in this lawsuit in order to facilitate court-sponsored mediation, and the parties agreed that Plaintiff would not serve his FAC unless and until mediation was unsuccessful.  ECF Nos. 9, 11.  The terms of the stipulation preserved the District's right to challenge inadequate service.  Once mediation ultimately proved unsuccessful in resolving the matter, the District was thereafter served with the FAC, pursuant to this Court's Order, on or about November 23, 2015, although no proof of service was filed with the Court.  ECF No. 22.

In its initial Motion to Dismiss filed on December 14, 2015 (ECF No. 23), the District urged the Court to dismiss Plaintiff's Complaint because the original version was not served within 120 days after its filing on February 17, 2015 as mandated by Rule 4(m).  The District further alleged that Plaintiff's Section 504 claims, as well as his claim for discrimination based on disability and national origin, fail to state a viable claim in any event.  By Memorandum and Order filed June 13, 2016 (ECF No. 83), the District's Motion was granted in part and denied in part.  The District's argument that Plaintiff's Complaint should be dismissed for failure to effectuate timely service was rejected.  The District's argument that Plaintiff's Section 504 claims failed to state a viable claim was also rejected, but the Court agreed that Plaintiff's discrimination claims failed to specify the legal basis upon which they were premised, and the Court dismissed those claims accordingly.   Plaintiff was permitted leave to amend.

On July 4, 2016, Plaintiff filed his SAC.  In addition to amending her discrimination claims, Plaintiff also purports to add eight additional individually named defendants to her lawsuit.

///
///
///
///

---

[8] The Amended Complaint does not purport to appeal the OAH's January 11, 2015 decision on Plaintiff's expedited claims, despite the fact that Plaintiff's original complaint challenged that decision.

8

# STANDARD

### A. Motion to Strike

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations omitted). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Id.

### B. Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id. Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[9] Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists,

---

[9] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

9

even in the absence of a challenge from any party." Id.; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id. However, in the case of a facial attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may

review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**C. Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

### A. Motion to Strike SAC as Belatedly Filed

According to the District, its "first and foremost" objective in bringing this motion is to challenge Plaintiff's filing of the SAC as untimely. Def.'s Mot., 3:4-5. The District correctly points out that the Court's June 9, 2016, Memorandum and Order dismissing certain portions of Plaintiff's FAC granted leave to amend, but specified that Plaintiff had to do so "not later than twenty (20) days" following the date said Memorandum and Order was filed on June 9, 2016. ECF No. 83, 14:8-10. According to the District, that twenty-day deadline expired on June 29, 2016, and because Plaintiff's SAC was not filed until July 4, 2016, it should be stricken as having been submitted after that period passed.

In response, Plaintiff points out, also correctly, that the Court issued an Amended Memorandum and Order on June 13, 2016 that contained the same specification that if Plaintiff chose to file a SAC, he had to do so within twenty days. Plaintiff contends that it was reasonable to use the date of the Amended Order as the applicable touchstone, and claims that his filing of the SAC on July 4, 2016 came within the twenty-day period following the Amended Order.

13

The Court agrees that Plaintiff was not remiss in calculating his period to amend from the date of the Amended Memorandum and Order. Consequently, the SAC was timely filed, and the District's Motion to Strike it as untimely fails.

**B.	Motion to Strike/Dismiss Parties Added without Leave of Court**

In addition to claiming that the entire SAC should be stricken as untimely, Plaintiff also claims that Plaintiff's inclusion of eight individually named defendants without leave of court should also not be countenanced, and that those purported defendants should be stricken since the Court's Memorandum and Order did not contemplate the inclusion of additional defendants in the SAC and because Plaintiff did not seek leave of court before adding the additional parties.

Again, the District is correct in stating that if the court grants leave to amend, the extent of that right is defined by the scope of permission granted, and here the Court's Order did not contemplate that new defendants would be included in the SAC. See, e.g., Molly Stearns, et al. v. Select Comfort Retail Corp., et al., 2009 WL 3413679 at *3 (N.D. Cal. Sept. 18, 2009).

Because Plaintiff can still move to add additional parties, and because most if not all of the individual defendants named are identified within the OAH decisions attached as Exhibits A, B, and C to Plaintiff's original and FAC, the District cannot credibly argue that they have been prejudiced by said defendants not being identified earlier. Consequently, in the interest of expediency, the Court will permit Plaintiff to amend to add the additional named defendants enumerated within the SAC. Therefore, the District's Motion to Strike on that basis is DENIED.

Permitting the inclusion of the additional defendants does not, however, end the Court's inquiry. The District has also alternatively moved to dismiss all allegations against the individual defendants as wholly conclusory and therefore insufficient to state a viable claim in any event. This argument is well taken. Paragraph 68 of the SAC contains one of the few charges against these newly added defendants and states:

///

> The acts of Defendants Calley, Clark, Pierucci, Gentry, Clark, and (sic) Pope, Koepp Romero [and] Cothern. . . deprived the plaintiff of his particular rights under the laws of the United States and the United States Constitution.

This allegation is plainly insufficient to put the individual defendants on notice of what conduct they stand accused of. Moreover, the only other specific reference to the newly added defendants comes at Paragraph 94 of the SAC, and it fares no better:

> Defendant [District], Rita Pierucci, Janet Clark, Jane Cothern, Darryl Pope, Patrick Calley, Brittany Gentry, Koepp-Romero acted under color of law; and the acts of the defendants deprived the plaintiffs of lawful rights under the laws of the United States and California namely the right to pursue Expedited Due process after 10 days of Disciplinary removal and the right [to] be informed of the content of student's educational records and participate in 504 and IEP meetings.

Consequently, although the OAH decisions as generally discussed in the Background section of this Memorandum and Order do provide some clues as to the role of the individual defendants in the events underlying these proceedings, the SAC itself is virtually silent as to the substance of the allegations levied against them. There are no specific acts identified in the SAC that can be attributed to any specific District employee on an individual basis. This does not satisfy Rule 8's pleading requirement that Plaintiff provide a "short and plain statement" as to why he is entitled to relief against any particular defendant. Consequently, the SAC fails on its face to state any viable claim against any of the individual defendants and all allegations against them are dismissed, without prejudice. Should Plaintiff choose to amend, any amended pleading must include far more specific factual allegations than those attempted here.[10]

///

---

[10] Given the dearth of any factual allegations whatsoever against the individual defendants, and the fact that the SAC fails as against them on that most fundamental basis, the Court need not consider whether Plaintiff's particular claims otherwise fail on a substantive basis, and the Court declines to do so at this time. The Court does note, however, that there appears to be no individual liability either the ADA or Section 504. The ADA, at 42 U.S.C. § 12132, provides only for liability of public entities, not individuals. Similarly, most case law holds that there is no individual liability under Section 504, because individuals do not receive financial assistance for purposes of the Rehabilitation Act. See Becker v. Oregon, 170 F. Supp. 2d 1061, 1067 ( D. Or.. 2001).

### C. Discrimination and Retaliation Claims against the District

Plaintiff's discrimination and retaliation claims, which were lumped together into a single unsupported cause of action in the FAC that the Court rejected as insufficient, have now been reminted in the SAC as three separate, new claims 1) Disability Discrimination - - Failure to Train (Count Four); 2) Disability Discrimination and Retaliation (Count Five); and 3) Discrimination -- National Origin (Count Six).

Turning first to Plaintiff's general discrimination claims, as alleged in Count Five, according to the SAC those complaints are predicated in part on California's Unruh Act, Cal. Civ. Code § 51. The District argues, however, that because it qualifies as a "state agency" for purposes of immunity under the Eleventh Amendment, it cannot be sued under the Unruh Act in federal court. Plaintiff's opposition concedes that the District is immune from liability for any Unruh Act violation, and therefore Plaintiff's Fifth Count is DISMISSED against the District to the extent it is predicated on such a violation. Moreover, to the extent Plaintiff's Sixth Count is predicated on either the Unruh Act or made in accordance with the provisions of 42 U.S.C. § 1983, the District argues that Eleventh Amendment immunity applies to those claims as well, which Plaintiff also concedes. Consequently, the District is entitled to DISMISSAL of the Fifth and Sixth Counts, to the extent they rely either on the Unruh Act or upon 42 U.S.C. § 1983.

The District next argues that Plaintiff has failed to adequately plead discrimination under either Section 504 or the ADA because benefits protected under either statutory scheme are "only available to disabled students, not non-disabled students." Def.'s Mot., 12:24-25. According to the District, that makes any discrimination claim unavailing, since "it is logically fallacious for Plaintiff to plead that he was denied a benefit due to his disability that he could not have qualified for without a disability." Id. at 13:21-22. Therefore, the District claims that neither Plaintiff's Fourth nor Fifth Counts can withstand pleading scrutiny.

The Court is utterly unpersuaded by this contention. The purpose of Section 504 and the ADA is to permit disabled students to access the same kind of programs

available to their non-disabled peers.  To argue that violations of Section 504 and the ADA cannot be discriminatory in nature is nonsensical.

The District's challenge to Plaintiff's retaliation claims is also unavailing.  The District attempts to argue that Plaintiff's retaliation claim fails because the legally protected event which triggered retaliation was the filing of his due process claim on November 22, 2015, and the District could not have retaliated against him by initiating a manifestation hearing determination on November 19, 2014, at a point <u>before</u> that protected filing.  The District, however, ignores the fact that Plaintiff filed a due process action on October 6, 2014, <u>before</u> the alleged retaliatory determination.  While Plaintiff did dismiss the expedited portion of that action before the alleged retaliation took place, he did not dismiss the non-expedited portion, which remained pending on November 19, 2014.  Accordingly the District's claim that "the timeliness of events demonstrates that the retaliation claim must fail" (Def.'s Mot., 14:1-20) lacks merit.

Finally, the District alleges that because Plaintiff never identified his national origin, he cannot claim to have been discriminated against on that basis.  The SAC nonetheless makes it clear that Plaintiff's mother and guardian ad litem, Concepcion Varela, requested that pertinent school records and documents be translated into Spanish because she could not read English, and that the District failed to honor those requests.  SAC, ¶ 6, 13-14, 18.  While the District may be correct that Plaintiff's precise national origin is not identified within the SAC, the Supreme Court has long held in the context of Title VI[11] that language assistance services are required to ensure that individuals have meaningful access to federally funded programs, and that the denial of such access constitutes national origin discrimination.  <u>Lau v. Nichols</u>, 414 U.S. 563, 568 (1974).  Consequently, the District's contention that Plaintiff has not stated a prima facie case for discrimination on the basis of national origin also fails.

///

---

[11] Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

**CONCLUSION**

For all of the foregoing reasons, the District's Motion to Strike or to Dismiss Plaintiff's Second Amended Complaint (ECF No. 94) is GRANTED to the extent that no viable claims against the individually named Defendants have been asserted. The District's Motion is also GRANTED on sovereign immunity grounds to the extent that Plaintiff's Fifth and Sixth Counts against the District rely either on California's Unruh Act or upon 42 U.S.C. § 1983. The District's Motion is otherwise DENIED. To the extent Plaintiff wishes to file a Third Amended Complaint, he must do so not later than twenty (20) days following the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated: November 9, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE