UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.V., a minor, by parent and Guardian ad Litem, CONCEPCION VARELA,<br><br>Plaintiff,<br><br>v.<br><br>PANAMA-BUENA VISTA UNION SCHOOL DISTRICT; RITA PIERUCCI, (in her official capacity and as an individual), JANET CLARK, (in her official capacity), DARRYL POPE, (in his official capacity and as an individual), CINDY KOEPP-ROMERO, (in her official capacity), PATRICK CALLEY, (in his official capacity and as an individual), JANE COTHERN, (in her official capacity and as an individual), BRITTANY GENTRY, (in her official and individual capacity), MATT HARPER (in his official capacity), Does 9-20,<br><br>Defendants. | No. 1:15-cv-00246-MCE-JLT<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff A.V. ("Plaintiff"), by his parent and guardian ad litem, Concepcion Varela ("Plaintiff's mother" or "Ms. Varela"), challenges various actions taken by Defendant Panama-Buena Vista School District ("District" or "Panama") with respect to A.V.'s educational placement. Plaintiff has already pursued two special

1

education "due process" proceedings in accordance with the provisions of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), to rectify what he alleges were unlawful steps taken by the District against him. He now appeals adverse decisions rendered by the Office of Administrative Hearings ("OAH") following those proceedings. In addition to IDEA violations, Plaintiff claims violations of § 504 of the Rehabilitation Act of 1973, 29 U.SC. § 701 et seq. ("Section 504") as well as claims for discrimination and retaliation on the basis of disability and national origin under both Section 504 and Title II of the Americans with Disabilities Act.[1]

Presently before the Court is Plaintiff's Motion for Summary Judgment—Appeal of Administrative Hearing Decisions (ECF No. 116). As set forth below, that Motion is DENIED and the appealed determinations made by the OAH are AFFIRMED.[2]

## BACKGROUND[3]

Plaintiff's mother enrolled A.V. at the District's Stonecreek Junior High School prior to the first day of the 2014-15 school term. A.V. was twelve years old at the time of that enrollment. On August 18, 2014, the first day of school, Ms. Varela provided the District with a copy of A.V.'s most recent Section 504 plan along with a behavioral support plan from the Bakersfield City School District ("BCSD") where A.V. had previously attended classes. The Section 504 and behavioral support plans were

---

[1] In a related proceeding, <u>Panama-Buena Vista Union School District v. A.V., et al.</u>, Case No. 1:15-cv-01375-MCE-JLT, ("Related Case") the District appealed that portion of one of the OAH decisions decided against it. That appeal has been adjudicated by separate Memorandum and Order filed in the Related Case.

[2] Having determined that oral argument was not of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

[3] The facts in this section are derived from the allegations as set forth in Plaintiff's Second Amended Complaint, as augmented by additional facts drawn from the OAH's decisions in this matter attached as Exhibits A, B, and C to the Complaint and Amended Complaint. Citations to the Expedited Hearing Administrative Record made in this Memorandum and Order are denoted as "E-AR"; references to the Non-Expedited Hearing Administrative Record will be listed as "U-AR".

2

apparently developed given A.V.'s medical diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

A.V. began to have behavioral incidents at school as early as August 21, 2014, just three days after classes commenced. He was referred to the office that day for provoking a fight with another student and for being combative. The District requested A.V.'s student records from BCSD that day, and those records were obtained on September 5, 2014. The records showed a history of multiple incidents during the preceding school year that required discipline, including suspensions. E-AR 369-97. BCSD conducted a psychoeducational evaluation of A.V. between February and April of 2013 and assessed his cognitive, academic, and social/emotional functioning. See ECF No. 96-3. The report concluded that A.V. had average intelligence, that his academic abilities ranged from average to high average, and that he was unlikely to be autistic. Id. at p. 25. The report further concluded that although A.V. had "an apparent disorder in one or more of the basic psychological processes," that disorder did not hinder his ability "to acquire academic skills and function in a general education classroom." Id. BCSD thereafter convened an Individualized Educational Plan ("IEP") meeting to consider and discuss the results of the psychoeducational assessment and to determine whether A.V. was eligible for special education and related services. Id. The IEP team concluded that AV was not eligible. ECF 96-4 at p. 6.

On August 27, 2014, A.V. allegedly threatened to injure another student at Stonecreek and was also purported to have bullied, intentionally harassed and intimidated a group of students. This caused the District to suspend A.V. for two days. That same day, however, the District held a Section 504 team meeting and developed a Section 504 Accommodation Plan for A.V. Ms. Varela attended the meeting with the assistance of a Spanish interpreter provided by the District and accompanied by an educational advocate. At that time, the District believed that A.V.'s behaviors could be addressed through accommodations in his Section 504 plan, and Plaintiff's mother consented to the District's proposals in that regard. In addition, the District presented

and explained a general education behavior contract to Ms. Varela and to A.V., which they signed and understood.  Ms. Varela did not indicate at this time that her son had any disability that would interfere with his ability to comply with the contract.  There is also no indication that she asked for a referral for special education at that time.

Despite A.V.'s behavior contract, he was referred to the office twice on September 3 and 4, 2014, for poor attitude and profanity.  In addition, on September 5, 2014, A.V. received five days of lunch detention for showing disrespect to another student.  Then, on September 11, 2014, after the District intervention counselor observed A.V. grabbing a female student's buttocks, A.V. was suspended for an additional three days, and the District scheduled a Section 504 "Manifestation Determination" meeting for September 18, 2014.[4]  In the meantime, on September 15, 2014, Plaintiff's mother sent the District a handwritten letter in English requesting that A.V. be assessed for eligibility for special education services.  Thereafter, at the September 18, 2014 meeting, the District's psychologist told Ms. Varela, who again participated through a Spanish interpreter, that the District wanted to assess A.V. for special education (it appears that the psychologist was not aware of Ms. Varela's recent letter at that time).  This was approximately twenty-two days following A.V.'s enrollment in the District for the 2014-15 school year.  Consequently, while the District initially thought that A.V.'s behavior was not necessarily inconsistent with the behavior of many seventh grade boys adjusting to junior high school, within about three weeks it determined that he in fact needed to be further assessed for disability purposes.

After Plaintiff's mother told District staff that she thought A.V. did better with male teachers and counselors, the District recommended that A.V. transfer to Thompson Junior High School where more support from male staff members was available.  Ms. Varela consented to that transfer.

---

[4] The purpose of a Manifestation Determination Hearing under the Rehabilitation Act is to determine whether the offending behaviors arise from the student's identified disability, here ADHD, as opposed to other sources.

A.V. began attending Thompson the following day, September 19, 2014. On September 22, 2014, school psychologist Brittany Gentry generated a "Consent for Assessment" of A.V.'s special education eligibility that included both a functional behavioral assessment and an evaluation of any emotional disturbance and specific learning disability. Ms. Gentry made that decision both because of Ms. Varela's concerns and because she believed A.V.'s numerous defiant and inappropriate behaviors made such an evaluation appropriate. According to the District, it mailed the Consent for Assessment to Ms. Varela at her address of record and it was not returned. The initial Consent form was generated in English because that was the language Defendant's mother had used in her written letter requesting a special education evaluation.

Nonetheless, in a subsequent Section 504 amendment meeting on October 7, 2014, which Ms. Varela attended, District Special Education Assistant Director Janet Clark claims she provided Plaintiff's mother with, and reviewed, a Spanish language version of the September 22, 2014 assessment. Ms. Clark and school psychologist Matt Harper allegedly told Ms. Varela why the District wanted to perform an assessment of her son, explaining that an evaluation was needed before determining what additional supports and services A.V. might need. Plaintiff's mother declined to sign the Consent, stating that she wanted to discuss it with her husband and would return it the following day. When Ms. Varela failed to do so, the District sent another Consent for Assessment form, also in Spanish, to her home address. That form was not signed and returned, either.

Between August 21, 2014 and October 6, 2014, A.V. was suspended a total of six school days. On October 2, 2014, for example, he was suspended for three days for making sexual gestures towards a female student. Despite numerous efforts on the District's part to obtain Ms. Varela's consent to special education assessment, she did not sign the Consent form until January 6, 2015, nearly four months after the District initially requested it and on the first day of A.V.'s expedited OAH hearing. Thereafter,

the District undertook comprehensive assessments of A.V. and convened an IEP team meeting on March 2, 2015. The team ultimately determined that A.V. qualified for special education and related services, under a primary disabling condition of emotional disturbance and a secondary disabling condition of other health impairment.

On October 6, 2014, Plaintiff's mother, through her attorney, filed an expedited due process hearing request with the OAH on grounds that A.V. was entitled to a special education manifestation determination since he had suffered multiple class and school removals as discipline for school behaviors. According to the request, Plaintiff's mother had requested an evaluation on September 14, 2014, but the District had nonetheless failed to afford her and A.V. their rights under the IDEA. A hearing on the expedited claim was scheduled for November 4, 2014. Plaintiff's counsel filed a request to dismiss the expedited claim the afternoon before the hearing was scheduled to commence, however, on grounds that she had "just realized" that A.V. did not meet the criteria for an expedited hearing since the District's records showed fewer than eleven days of suspensions prior to October 6, 2014. This prompted the District, on November 4, 2014, to move for sanctions on grounds that the expedited complaint was frivolous. On December 10, 2014, the Administrative Law Judge ("ALJ") assigned by the OAH issued sanctions in the amount of $1,793.50 on grounds that had Plaintiff's counsel reviewed the District's records prior to filing her request, she would have discovered that A.V. had not been removed from school in excess of ten days by October 6, 2014  The sanctions figure compensated the District's counsel only for her preparation for the expedited hearing between October 23, 2014, when the ALJ reasoned that Plaintiff's counsel should have been aware that A.V. had not been suspended for enough days to support an expedited hearing request, and November 3, 2014, when Plaintiff's counsel actually cancelled the hearing.

Despite Ms. Varela's continued failure to sign the needed Consent for special assessment, her counsel filed, on or about November 22, 2014, an amended request for due process which ultimately resulted in expedited and non-expedited decisions. The

expedited portions of her complaint in that regard[5] take issue with the discipline A.V. had received and the fact that his disabilities had not been adequately considered. Because expedited claims have to be adjudicated in short order, the expedited claims were determined first over a three-day hearing between January 6 and 8, 2015. The expedited hearing focused on whether the District should have conducted IDEA manifestation determinations prior to A.V.'s discipline, if it was deemed to have been on notice beforehand that A.V. was a student with a disability.

The District was on notice that A.V. potentially had a disability when his mother sent her assessment request on September 15, 2014. 20 U.S.C. § 1415(K)(5)(A). Moreover, while school districts can discipline a disabled student, once the student has been removed from school longer than ten days a "change in placement" is deemed to have occurred which, in turn, requires that a manifestation hearing determination be held to determine whether the underlying misconduct is related to the student's disability. Both of these requirements are, however, subject to an exception. If the District provides a request for assessment once a student is suspected of having a disability and if the student's parent declines to allow an evaluation, the District no longer has a basis of knowledge that the student is disabled until the parent provides the needed consent. Id. at § 1415(k)(5)(C).

Following the expedited hearing, the ALJ found that because Plaintiff's mother did not provide consent for assessment until after the disciplinary events occurred, it had no obligation to provide IDEA manifestation hearings before the discipline was imposed. Additionally, despite Ms. Varela's claim that her son should have been entitled to protections on October 6, 2014, since he had been suspended in excess of ten days for disciplinary-related issues at that point, the ALJ determined that due to partial days and

---

[5] An expedited due process complaint is made pursuant to 34 CFR §§ 300.530 and 300.532 and challenges, inter alia, discipline meted out to a disabled student that changes the student's placement. An expedited hearing can also be requested for a manifestation determination that the student's offending conduct was or was not caused by his or her disability. See 34 CFR § 300.530(e). A non-expedited complaint, on the other hand, may generally challenge the provision of a Free and Appropriate Public Education ("FAPE) to disabled students as guaranteed by the IDEA under 34 CFR §§ 300-507-300.516.

7

non-suspension absences the requisite eleven-day threshold had not been reached on October 7, 2014, when the Spanish language Consent form was provided. Moreover, the ALJ rejected Ms. Varela's claim, as both implausible and contrary to the testimony of all the other witnesses, that she had not received any of the Consent forms until after Plaintiff was expelled on or about November 14, 2014. Given that determination, the ALJ determined that Plaintiff had no IDEA protection available prior to his expulsion, either.

Plaintiff's second hearing, which encompassed his non-expedited claims, was conducted later, between April 15, 2015, and April 17, 2015. That hearing adjudicated claims that the District had failed to timely assess A.V. in all areas of suspected need for special education placements, as well as claims that the District had deprived Ms. Varela of the opportunity to meaningfully participate in A.V.'s IDEA program by failing to translate disciplinary documents into Spanish. The hearing took place over the course of three days between April 15, 2015, and April 17, 2015. The OAH's resulting decision, dated June 11, 2015, was in A.V.'s favor to the extent the hearing officer concluded that the District had sufficient information between August 18, 2014, and October 6, 2014, to trigger its duty to assess A.V. for special education eligibility.[6] Nonetheless, given Ms. Varela's repeated failure to return the Consent form in a timely fashion once it had been provided to her as delineated above, the hearing officer found that no IDEA child-find obligation was breached after October 7, 2014. In addition, the hearing officer rejected A.V.'s claim that the District had to translate all disciplinary documents from A.V.'s cumulative file for Ms. Varela, or to provide Ms. Varela written explanations in Spanish for each disciplinary event, in order to ensure her meaningful participation in the IDEA process.

///

---

[6] As indicated above, the ALJ's decision in that regard was separately appealed by the District in the Related Case. By Memorandum and Order dated December 5, 2017, this Court overturned that decision.

8

Plaintiff instituted the present proceeding on February 7, 2015, after the ALJ ruled against him on or about January 23, 2015, on his expedited claims, and following the sanctions order against Plaintiff's counsel on December 10, 2014. On August 28, 2015, A.V. filed a First Amended Complaint which appealed, in addition to the OAH's January 23, 2015, decision and the sanctions order, also the OAH's June 11, 2015, decision on the non-expedited portions of Plaintiff's claim.

In now moving for summary judgment, Plaintiff seeks a reversal of the ALJ's decision in the expedited hearing that he was not entitled to a manifestation hearing as of October 6, 2014, or alternatively by November 14, 2014, prior to his expulsion. In addition, Plaintiff seeks a ruling that the District denied him FAPE for the entire 2014-15 and 2015-16 school year by failing to properly provide a Consent form for his assessment. Plaintiff also asks the Court to make a finding that the District had a duty to either verbally translate, or translate in writing, his disciplinary records. Finally, Plaintiff's counsel requests an order overturning the ALJ's imposition of sanctions against her.

**STANDARD**

In adjudicating an appeal from an administrative decision regarding the rights of students with disabilities, the court is charged with receiving the record of the administrative proceeding which, in essence, forms the undisputed facts of the case. Though not a "true" motion for summary judgment, the appeal of an IDEA-based due process hearing decision is properly styled and presented by the parties in a summary judgment format. Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995). "[T]he procedure is in substance an appeal from an administrative decision not a summary judgment." Id.

The standard for district court review under the IDEA is set forth in 20 U.S.C. § 1415(i)(C), which provides as follows:

///

> In any action brought under this paragraph the court-- (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that "due weight" be given to the administrative proceedings. Anchorage School Dist. v. M.P., 689 F.3d 1047, 1053 (9th Cir. 2012); Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). The amount of deference so accorded is subject to the court's discretion. Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987). In making that determination, the thoroughness of the hearing officer's findings should be considered, with the degree of deference increased where said findings are "thorough and careful". Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995), citing Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." Capistrano, 59 F.3d at 891.

Because of the deference potentially accorded the administrative proceedings, complete *de novo* review is inappropriate. Anchorage School Dist. v. M.P., 689 F.3d at 1053.; Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 887 (9th Cir. 2001). Instead, the district court must make an independent judgment based on a preponderance of the evidence and giving due weight to the hearing officer's determination. Capistrano, 59 F.3d at 892. After such determination, the court is free to accept or reject the hearing officer's findings in whole or in part. Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1473-73 (9th Cir. 1993). In addition, a district conference must also grant deference to a hearing officer's findings where those findings "are based on credibility determinations of live witness testimony." J.S. v. Shoreline Sch. Dist., 220 F. Supp. 2d 1175, 1184 (W. D. Wash. 2002).

While the petitioning party bears the burden of proof at the administrative level, Schaffer v. Weast, 546 U.S. 49, 57 (2005), the party challenging an administrative

decision in federal district court has the burden of persuasion on his or her claim. Clyde K. v. Puyallup Sch. Dist. No. 3, 35 F.3d 1396, 1399 (9th Cir. 2004).

## ANALYSIS

### A. Because The District Lacked The Requisite Knowledge That A.V. Was A Student With A Disability Prior To The Behavioral Incidents Giving Rise To His Expulsion, A.V. Was Not Entitled To The Procedural Protections Afforded Under The IDEA.

Plaintiff claims that the ALJ erred by determining that he was not entitled to the IDEA's procedural protection when subjected to disciplinary measures by the District, either after October 6, 2014, or alternatively by November 14, 2014, shortly prior to AV's expulsion on November 18, 2014. After reviewing the ALJ's decision along with the administrative record, the Court does not find any such error.

A student not yet determined to be eligible for special education can claim the IDEA's procedural protections, including a manifestation determination hearing, if the local education authority, here the District, had a "basis for knowledge, that the student was disabled before the behavior giving rise to a disciplinary action occurred." 20 U.S.C. § 1415(k)(5)(A); 34 C.F.R. § 300.534(a). To the extent that a student with disabilities is removed from school more than ten days in the course of such discipline, a manifestation determination review is required inasmuch as removals exceeding that length are deemed to constitute a "change in placement." 34 C.F.R. § 300.536.

In this matter, the critical issue is whether the District had the requisite "basis for knowledge" of A.V.'s disability. To the extent that Plaintiff's mother requested that he be evaluated for special education services by letter dated September 15, 2014, a basis for knowledge exists. 20 U.S.C. § 1415(k)(5)(B); 34 C.F.R. § 300.534(b). Nevertheless, the District is not deemed to have knowledge if the parent has not allowed an evaluation of the student. 20 U.S.C. § 1415(k)(5)(C); 34 C.F.R. § 300.534(c). What the District must do is to make reasonable efforts to gain a parent's informed consent for such evaluation.

11

34 C.F.R. 300.300(a)(iii).  As long as those reasonable efforts are made, a parent's failure to consent to special education evaluation means that his or her child can be disciplined in the same manner as students without disabilities who engage in comparable behavior.   20 U.S.C. § 1415(k)(5)(D)(1); 34 C.F.R. § 300.534(d).

        Plaintiff's mother's September 15, 2014 request for assessment, which was handwritten in English (E-AR 401), triggered a fifteen-day period from that date within which the District had to provide a Consent for Assessment.  Cal. Ed. Code § 56321(a).  The evidence shows that the District provided Plaintiff's mother with the necessary Consent for Assessment, in English, on September 22, 2014.  E-AR 1156:1-5.  Given the fact that Plaintiff's mother had requested special assessment just a week earlier, in English, it was not unreasonable for the District to have initially generated the Consent for Assessment in the English language, particularly since Plaintiff's mother had otherwise  communicated with the District in English and continued to do so on many occasions.  E-AR 686:9-687:8; 727:25-728:23; 737:11-17; 748:15-750:24; 1157:20-1158:8; 1295:18-1296:21; U-AR 611:13-17; 626:24-627:5; 945:2-5.  In addition, after the District determined that a Spanish language Consent was necessary at the Section 504 meeting on October 6, 2014, it provided both Spanish and English consent forms, both by mail and delivered personally to Ms. Varela, all without success.  Once the District requested Consent from Ms. Varela, it no longer had a basis of knowledge that A.V. was a child with a disability until his mother provided her Consent for Assessment.  20 U.S.C. § 1415(k)(5)(C). Had Plaintiff's mother provided her Consent and permitted assessment prior to November 14, 2014, when A.V. engaged in behaviors that ultimately resulted in his expulsion from the District,[7] he would have been entitled to a manifestation determination hearing under the IDEA beforehand.  Plaintiff's mother, however, did not give her Consent until January 6, 2015, well after Plaintiff was expelled from the District.  Consequently, Plaintiff was not entitled to the protections of the IDEA before his

---

[7] As of November 14, 2014, the District appears to concede that Plaintiff had been removed from school for more than eleven days.

expulsion.

While Plaintiff appears to claim she never received a Consent for Assessment before November 14, 2015, the ALJ found that claim to lack credibility. As the ALJ observed:

> Parent's testimony was particularly inconsistent regarding the Consent for Assessment. She initially denied at hearing that she had ever seen the document in English or Spanish, or had it explained to her, including the English copy mailed on September 22, 2014. During the October 7, 2014, 504 amendment meeting, [Special Education Assistant Director Janet] Clark, who is a licensed school psychologist and board certified behavior analyst, asked Parent about the Consent for Assessment. Both Ms. Clark and [School psychologist Matt] Harper testified that Parent stated at the meeting that she had signed the Consent for Assessment but did not believe she was required to return it. Parent did not explain or refute Ms. Clark's and Mr. Harper's credible testimony.

Expedited Decision, Ex. B to Pl.'s Compl., ¶ 11.

Plaintiff was no more successful in credibly claiming that proceedings had not been explained to her by the District in a manner she could understand. The ALJ's Expedited Decision made this very clear:

> Parent is fluent in the Spanish language, reads only a few words in Spanish and English, and speaks and understands some English. Parent's testimony that she never saw, received or had explained to her, any of the documents from Panama, was not credible. She denied ever receiving any mail at her home address from Panama, even though she received other mail at home. Numerous Panama witnesses consistently and credibly testified that: Panama provided a Spanish language interpreter for Section 504 meetings; various Panama staff gave detailed explanations to Parent at the meetings and occasionally spoke to her on the phone after meetings, both in English and Spanish; a Spanish speaking educational advocate accompanied Parent to the Section 504 meetings; Panama gave Parent documents at or after October 7, 2014, and explained documents at each meeting; and Panama mailed copies of documents in English and Spanish to Parent's address of record on at least four different occasions without receiving them back as undeliverable. Student offered no credible evidence to establish that the assessment plans were never received.

Id. at ¶ 10.

///

13

This Court will not revisit the credibility determinations made by the ALJ over the course of a hearing lasting several days and entailing multiple witnesses. Moreover, given the multiple Consent for Assessment forms both mailed to Plaintiff's mother and delivered to her during the course of multiple meetings at which a Spanish language interpreter was present and participated, her claim that she never received the assessments is unpersuasive on its very face.

Plaintiff's allegation that the District failed to offer his mother the Consent for Assessment "by means accessible to her" completely lacks merit under the circumstances of this case. The District was required only to make reasonable efforts to obtain the necessary consent from Plaintiff's mother, and the facts and testimony presented demonstrate that the District went the extra mile, and then some, to do so, all to no avail. Given that conclusion, and the fact that Ms. Varela did not return the Consent for Assessment form until well after the disciplinary events leading to A.V.'s expulsion occurred, under the IDEA the District was deemed to have been without knowledge that A.V. was a student with a disability at all pertinent times prior to that expulsion.

In addition, despite Plaintiff's claim to the contrary, he was not entitled to IDEA protections as of October 6, 2014, when Plaintiff's counsel filed her original expedited request for due process. Plaintiff appears to argue that because the District did not provide Plaintiff with a Spanish-language Consent for Assessment form until October 7, 2014, and because A.V. had been suspended for in excess of ten days by October 6, his IDEA protections were triggered because the District had not yet properly requested assessment. Again, Plaintiff is wrong. Ms. Varela requested, in English, that her son be evaluated for special education purposes by handwritten letter dated September 15, 2014. Within seven days, a period well within the fifteen-day period prescribed by the California Education Code, the District generated a Consent for Assessment (also in English) and sent it to Plaintiff's mother. This satisfied the District's Child Find obligation with respect to Ms. Varela's September 15, 2014 request. Moreover, even if it did not,

the ALJ determined after examining all the evidence that A.V. had been suspended for a total of only six days as of October 6, 2014. The Court declines to revisit that factual determination, and believes it to be correct in any event. This means that even assuming the District did not generate a proper Consent for Assessment form until October 7, 2014, when forms in both English and Spanish were provided to Ms. Varela, discipline resulting in excess of ten days of suspension still had not occurred before the Consent for Assessment was unquestionably provided on October 7, 2014. It should also be noted in connection with this determination that even Plaintiff's counsel conceded that the District had not suspended A.V. for the requisite period as of October 6, 2014 when she voluntarily withdrew her expedited request for due process filed at that time for failing to meet the IDEA's prerequisites in that regard.[8]

### B. Because Plaintiff's Mother Failed To Return A Signed Consent For Assessment To The District Until January 6, 2015, The District Did Not Fail To Meet Its Child Find Obligation Under The IDEA Prior To That Time.

Because this contention has already been addressed in connection with the preceding argument, any claim otherwise is also rejected as a basis for Plaintiff's appeal.

### C. The District Met Its Obligation To Ensure Plaintiff's Mother's Involvement In The Disciplinary Proceedings Leading To A.V.'S Expulsion; It Had No Duty Per Se To Translate All Disciplinary Documents Into Spanish.

Plaintiff correctly points out that "the informed involvement of parents" is central to the IDEA and its requirement that disabled children receive a free and appropriate public education. See Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 524 (2007). Consequently, protecting parental participation is deemed to be "[a]mong the [IDEA's]

---

[8] The Court recognizes that Plaintiff, in his reply papers, makes a completely new argument (having not been made either in her complaint or in the moving papers for the present motion) that aside from whether A.V. had been suspended for more than ten days as of October 6, 2014, he still had been subjected to a "pattern of removal" under 34 C.F.R. § 300.536. Because this argument was not made until Plaintiff's reply, it will not be considered because arguments first raised at that time are improper. Eberle v. City of Anaheim, 901 F.2d 814, 817-18 (9th Cir. 1990) (new issue cannot be raised for the first time in a reply brief); Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief").

most important procedural safeguards." Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 882 (9th Cir. 2001). To that end, the law requires that local educational agencies like the District "shall take any action necessary to ensure that the parent or guardian understands the proceedings at a meeting, including arranging for an interpreter for parents or guardians . . . whose native language is a language other than English." Cal. Ed. Code § 56341.5(i); see also 34 C.F.R. 300.322(3).

Meaningful participation in the special education request nonetheless is deemed to have occurred when the parent is informed of the child's problems, attends meetings, expresses disagreement regarding conclusions reached with regard to special education services, and requests revisions to a student's special education services plan. N.L. v. Knox County Schools, 315 F.3d 688, 693 (6th Cir. 2003); Fuhrmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1036 (3rd Cir. 1993). Contrary to Plaintiff's argument, however, facilitating a parent's ability to participate in the special education planning process, and to provide consent for assessment, does not require that all disciplinary documents be translated into the parent's native language. The ALJ did not err when she found no such duty.

Here, as explained above, it was initially reasonable for the District to have provided its Consent for Assessment and notice of parents' rights in English on September 22, 2014. Additionally, beginning on October 7, 2014, the District also ensured Ms. Varela's ability to participate in the process through the Spanish language, which it appears undisputed that she spoke fluently. The District met numerous times both informally and formally to discuss A.V.'s issues. During most, if not all of those meetings, Ms. Varela was either accompanied by a Spanish-speaking advocate or was provided with interpreters or Spanish-speaking staff to aid in communication, or both. E-AR 407; 408, 419; 420; 610:19-21; 614:11-24; 941:11-23. In this manner, even if one accepts Ms. Varela's argument that she was unable to read much in either English or Spanish, her rights to participate in communication were nonetheless protected orally by explanations provided in Spanish.

16

## D. Sanctions Against Plaintiff's Attorney Were Properly Imposed.

Although not specifically requested in Plaintiff's Statement of Relief Requested (See Pl.'s Mot, 5:19-23), Plaintiff nonetheless argues in his motion that the $1,793.50 in sanctions awarded by the ALJ in her Order of December 9, 2014 (Ex. A to Pl.'s Compl.) be reversed. While conceding that the District's records identified only six removal days as of the time Plaintiff filed her expedited hearing request on October 6, 2014, Plaintiff nonetheless appears to argue that because the District "falsified records" and was "deceptive," the sanctions award was improper.

This argument also misses the mark. The ALJ found no evidence of falsification, and despite bare assertions to that effect Plaintiff provides no supporting evidence for any such assertion, either. What the ALJ did find was that Plaintiff's counsel 1) had not examined the District's records herself before filing her expedited claim on October 6, 2014; and 2) did nothing to cancel the hearing on the expedited claim, which had been set for November 4, 2014, until the day beforehand despite having been on constructive if not actual notice of the District's records by approximately October 23, 2014. December 9, 2014 OAH Decision, Ex. A to Pl.'s Compl., pp. 4-5. Given counsel's failure to dismiss her claim and cancel the hearing, despite that constructive notice, until just before the hearing was scheduled to commence, the ALJ imposed sanctions against Plaintiff's counsel based upon time expended by the District's lawyers between October 23, 2014 and November 3, 2014. The Court does not find that determination to be erroneous and consequently will not disturb the sanctions awarded.

///
///
///
///
///
///
///

17

**CONCLUSION**

Based on all the foregoing, Plaintiff's Motion for Summary Judgment/Appeal of Administrative Hearing Decisions (ECF No. 116) is DENIED. The challenged OAH decisions are hereby affirmed. Since this matter is now concluded, the Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: January 8, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE